**TINTER, Appellant,**

v.

**LUCIK et al., Appellees.**

[Cite as *Tinter v. Lucik,* 172 Ohio App.3d 692, 2007-Ohio-4437.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88587.

Decided Aug. 30, 2007.

694

McCafferty & Williams and Joseph P. McCafferty, for appellant.

L. Ray Jones, for appellees.

---

JAMES J. SWEENEY, Presiding Judge.

{¶ 1} Plaintiff-appellant, Elizabeth M. Tinter, appeals from the trial court's order granting a directed verdict in favor of defendants-appellees, Marilyn Lucik and Mrs. Jean's Greens Inc., on her claims for breach of fiduciary duty, fraud, and conversion. For the following reasons, we affirm in part, reverse in part, and remand.

{¶ 2} A review of the record reveals the following facts: Lucik is a florist and owns a floral shop in Berea, Ohio called Mrs. Jean's Greens ("the Berea store"). Tinter and Lucik first met sometime in 1995, when Tinter purchased some flowers at the Berea store. It appears that the two developed a strong friendship.

{¶ 3} Sometime in 2001, Tinter approached Lucik about going into business together and opening another floral shop. According to the terms of the agreement, Tinter would be a silent investor in the business, and Lucik would operate and manage the business. The parties agreed that Tinter would invest $30,000 in the new venture and own 30 percent of the business, and Lucik would operate the business and own the other 70 percent.

{¶ 4} The parties hired an accountant, Mary Ehrman, to help incorporate their new business. Ehrman prepared Articles of Incorporation for the new business, Mrs. Jean's Greens in the Valley ("the Valley store"). On September 26, 2002, Tinter and Lucik signed the incorporation papers and sent them to the Ohio Secretary of State.

{¶ 5} Ehrman also prepared a Close Corporation Agreement and Cognovit Note reflecting that ownership was 70/30 and that Tinter's $30,000 investment was to be treated as a loan to the Valley store. However, these documents were never signed.

{¶ 6} Tinter and Lucik opened a checking and savings account at First Merit Bank with Tinter's $30,000 investment, and in October 2002, the Valley store began operations under Lucik's management. Lucik hired two florists, Judith Hansen and Licia Saringer, to assist in the store. Hansen testified that most of the sales were by cash or check. She also testified that the cash register did not work, so all sales were recorded by hand. As part of her job, Hansen was required to drop off all money taken in at the Valley store to Lucik at her Berea store for Lucik to deposit.

{¶ 7} In May 2003, Tinter received a letter from Lucik stating that the Valley store was not doing so well. In this letter, Lucik suggested shutting down for a few months and reopening the shop in a new retail space across the street from its present location. In response, Tinter gave Lucik an additional $20,000 to keep the Valley store running. The parties also engaged in some discussions about combining the Berea and Valley stores into one entity owned by both of them.

{¶ 8} On October 6, 2003, Tinter signed an agreement to purchase the Country Bouquet, a florist shop in Olmsted Falls, Ohio. On November 12, 2003, Lucik sent Tinter a letter informing her that the Country Bouquet store was in direct competition with her Berea store. Lucik informed Tinter that she was releasing any interest she had in the Valley store. Lucik also sent a letter to Tinter and various creditors of the Valley store informing them of her decision to walk away from the business and stating that she would "not be part of any financial transactions or responsibilities" of the Valley store.

{¶ 9} Following the receipt of these letters, Tinter began to investigate the financial affairs of the Valley store. She requested the corporate check book and all financial records of the Valley store. Tinter discovered that the checking account had a balance of only $1,500. Because all of the sales were recorded by hand, Tinter was able to recover only two weeks of sales records from Hansen and Saringer. Tinter also discovered that the Valley store was not advertised in the Medina County Yellow Pages. Rather, only the Berea store was listed. Tinter closed the Valley store.

{¶ 10} Tinter hired an accountant, Michelle Peace, to do the tax returns and audit the records of the Valley store. Based upon the bank deposit slips for the Valley store corporate bank account, Peace determined that the business had sales of only $8,279.76 in the 13 months that it was open. From the limited records available, Tinter also discovered that the deposits did not correlate and were substantially less than the actual sales. Tinter also noticed notations in the corporate checkbook indicating that Lucik had paid a bill of the Berea store in the amount of $560 from the Valley store account.

{¶ 11} On February 6, 2004, Tinter filed a complaint in the Cuyahoga County Court of Common Pleas alleging breach of fiduciary duty, fraud, and conversion. The gist of her complaint is that Lucik did not use her best efforts to run the shop, thereby losing Tinter's entire $50,000 investment. On March 17, 2004, Lucik filed an answer, claiming that the Valley store had failed due to the poor economy and slowing of business. Lucik also filed a counterclaim alleging that Tinter had breached a noncompete agreement when she opened the Country Bouquet.

{¶ 12} On January 31, 2005, a jury trial commenced. At the close of Tinter's case, the trial court granted a directed verdict in favor of Lucik and dismissed the jury. In so holding, the trial judge stated the following:

{¶ 13} "The defendant's motion will be granted. The court finds that the plaintiff failed to do due diligence in this matter of investing with another party in a business that she had no background in. Case is dismissed * * *."

{¶ 14} Tinter timely appealed this decision. On November 3, 2005, this court dismissed the appeal, finding that it was not a final, appealable order because the trial court did not certify its partial judgment as "no just cause for delay" as required by Civ.R. 54(B). See *Tinter v. Lucik,* Cuyahoga App. No. 86026, 2005-Ohio-5858, 2005 WL 2885970.

{¶ 15} On July 28, 2006, the trial court complied with our directive and added the language "no just reason for delay" to the judgment entry dated February 4, 2005.

{¶ 16} It is from this decision that Tinter now appeals and raises one assignment of error for our review:

{¶ 17} "I. The trial court erred in granting defendants' Rule 50(A) motion for a directed verdict."

{¶ 18} A motion for directed verdict is rightfully granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such opposing party. *Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 600 N.E.2d 1027. Such a determination is a question of law, not of fact. Thus, a trial court must submit claims to the jury if the plaintiff presents evidence on each element of the claims to establish a prima facie case. Id.

{¶ 19} With these principles in mind, we proceed to address whether the trial court properly directed a verdict in favor of Lucik.

## A. Breach of Fiduciary Duty

{¶ 20} Tinter first argues that the trial court erred in directing a verdict in favor of Lucik on her claim of breach of fiduciary duty. Specifically, Tinter alleges that Lucik, as the majority owner of the Valley store, breached her fiduciary duty to Tinter, a minority owner, when she assumed control of company property as her own, diverted business to another company of which she was sole owner, and used company funds to pay bills of the company of which she was sole owner. In response, Lucik argues that she does not owe Tinter any fiduciary duty because no corporation existed. Specifically, Lucik argues that the parties never issued stock certificates or held a meeting of shareholders.

{¶ 21} The general corporation law of Ohio provides that corporate existence begins upon the filing of the articles of incorporation. See R.C. 1701.04; *Olde World Travel Agency, Inc. v. Ram Publishing Co.* (Dec. 4, 1986), Cuyahoga App. No. 52306, 1986 WL 13681. Further, when persons hold themselves out as a corporation and act as if they, in fact, are a corporation, they are estopped to later deny corporate status. Id.

{¶ 22} Here, the parties filed their incorporation papers with the Ohio Secretary of State on September 26, 2002, and received a certificate of incorporation. Moreover, the parties clearly held themselves out in the community as a corporation. The parties obtained a taxpayer identification number from the IRS and paid sales tax to the state of Ohio in the name of the corporation. They also opened a checking account in the name of the Valley store at First Merit Bank. In addition, Lucik referred to herself as the president of the Valley store and acknowledged her 70 percent ownership when she resigned from the company. Based on these facts, we find that Lucik is estopped from denying the corporate existence of the Valley store.

{¶ 23} Generally, a close corporation is a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 107, 548 N.E.2d 217. The ownership of a close corporation is limited to a small number of people who are dependent on each other for the enterprise to succeed. Id. A fiduciary duty exists between shareholders of a close corporation, particularly between majority and minority shareholders. Id. That fiduciary duty "imposes on the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 130, 572 N.E.2d 198. In particular, a majority shareholder has a fiduciary duty not to misuse her power by promoting her personal interests at the expense of corporate interests. *United States v. Byrum* (1972), 408 U.S. 125, 137, 92 S.Ct. 2382, 33 L.Ed.2d 238.

{¶ 24} Applying these standards, we find that the trial court improperly directed a verdict in favor of Lucik on Tinter's claim for breach of fiduciary duty. Tinter presented evidence that Lucik failed to keep adequate business records during the course of the 13 months that the Valley store was open. Specifically, Lucik was able to produce sales slips for only a two-to-four-week period from July 9, 2003 to August 11, 2003 and daily summary sheets from October 6, 2003 to October 20, 2003. From these limited records, Tinter showed that monies received were not being deposited into the company account at First Merit and

were unaccounted for. Tinter also presented evidence that she personally made purchases from the Valley store in December 2002 and that the check was deposited into the account for Lucik's Berea store. Tinter also presented evidence that Lucik did not advertise the Valley store in the Yellow Pages but instead listed only her Berea location. Finally, Tinter presented evidence that Lucik wrote a check for $560 from the Valley store checking account to pay a bill of the Berea store.

{¶ 25} Viewed most strongly in favor of Tinter, as we are required to do, the evidence was sufficient such that reasonable minds could find that Lucik breached her fiduciary duty to Tinter by failing to keep adequate records of the Valley store and may have engaged in activities that promoted only her interests in the Berea store, of which she was sole owner, to the detriment of the Valley store, which she co-owned with Tinter. Thus, the evidence created a factual issue to be resolved by the jury, not the trial judge.

{¶ 26} Accordingly, the judgment of the trial court is reversed as to Tinter's claims of breach of fiduciary duty.

## B. Fraud

{¶ 27} Next, Tinter argues that the trial court erred in directing a verdict in favor of Lucik on her claims of fraud. Specifically, Tinter alleges that in the context of the fiduciary relationship between herself and Lucik, Lucik made factual misrepresentations and concealed material facts.

{¶ 28} In order to establish a claim of fraud, Tinter must prove the following: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859.

{¶ 29} Here, Tinter claims that Lucik misrepresented that she would use her best efforts to make the Valley store a success and did not do so. Tinter alleges that she relied on Lucik's promises and expertise in the floral business, which was material to her decision to invest $50,000 in the Valley store.

{¶ 30} We find that the record is devoid of any specific facts showing that Lucik knowingly made false representations with the intent to mislead Tinter into entering into a business relationship or concealed any facts concerning the business agreement. The evidence shows that Tinter did not make any inquiries

into how Lucik intended to run the business and/or the affairs of the business, financial or otherwise, until Lucik resigned from the company, 13 months after the Valley store opened. Moreover, Lucik advised Tinter in May 2003 that the business was not doing well and, instead of looking into the matter, Tinter sent Lucik another $20,000 to keep the business afloat.

{¶ 31} To support her allegations of fraud, Tinter claims that Lucik did not advertise in the Yellow Pages. However, there is no evidence that Lucik specifically told Tinter that she would advertise the Valley store in the Yellow Pages and deliberately failed to do so, as opposed to simply forgetting or not getting around to it. Indeed, Tinter admitted on cross-examination that she did not know what the opening or closing dates were for getting an ad in the Yellow Pages.

{¶ 32} Tinter also claims that Lucik was depositing monies earned at the Valley store into her Berea store account and that she paid a bill of the Berea store in the amount of $560 from the Valley store account. However, on cross-examination, Tinter admitted that the $560 was used to pay for repairs to a van that made deliveries from both the Berea and Valley locations.

{¶ 33} In light of the foregoing, we find that the trial court was correct in granting a directed verdict in Lucik's favor on Tinter's fraud claim. While Tinter's allegations may have some bearing on her claims for breach of a fiduciary duty, they do not rise to the level of fraud.

{¶ 34} Accordingly, the judgment of the trial court is affirmed as to Tinter's claim of fraud.

## C. Conversion

{¶ 35} Finally, Tinter argues that the trial court erred in directing a verdict in favor of Lucik on her claim for conversion. Specifically, Tinter alleges that she presented sufficient evidence to show that Lucik was depositing funds rightfully belonging to the Valley store into the account of the Berea store and was paying bills of the Berea store from the Valley store account.

{¶ 36} Conversion is a wrongful exercise of dominion or control over property of another in denial of or under a claim inconsistent with his rights. *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309, 318, 655 N.E.2d 744. Although a demand and a refusal to return the property are ordinarily necessary to prove conversion, acts by a defendant that are inconsistent with the right of the plaintiff's ownership are sufficient to satisfy this requirement. *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 93, 24 OBR 160, 493 N.E.2d 289. Money may be converted when it is identifiable and there

is an obligation to return the specific money in question. *Kiss v. Dick Baker Dodge* (Dec. 31, 1998), Erie App. No. E–98–027, 1998 WL 904920.

{¶ 37} Applying these standards, we find that the trial court improperly directed a verdict in favor of Lucik on Tinter's claims of conversion. Tinter presented evidence, through sales slips and daily summary sheets, that monies received from July 9, 2003 to August 11, 2003 and October 6, 2003 to October 20, 2003, were not deposited into the company account at First Merit and were unaccounted for. Tinter also presented evidence that she had personally made a $500 purchase from the Valley store in December 2002 and that the check was deposited into the bank account for the Berea location. Finally, Tinter presented evidence that Lucik had paid a bill of the Berea store in the amount of $560 from the Valley store checking account.

{¶ 38} In response, Lucik argued that the $560 taken from the Valley store checking account was for repairs and expenses to a van that both stores used and that the $500 purchase in December had to be delivered by the Berea store because the Valley store did not have the product. While these may be valid defenses, they are still questions of fact that should have been submitted to the jury. The issue here is whether, construing the evidence most strongly in favor of Tinter, reasonable minds could conclude that she failed to present any evidence that Lucik either wrongfully exercised dominion over Tinter's money or withheld money from her.

{¶ 39} From the testimony and evidence presented at trial, Tinter was able to show that some of the monies belonging to the Valley store were not accounted for or were given to the Berea store account, of which Lucik was sole owner. Whether this is a wrongful exercise of domain or a claim inconsistent with rights are questions of fact that should have been submitted to the jury.

{¶ 40} Accordingly, the judgment of the trial court is reversed as to Tinter's claim of conversion.

{¶ 41} The judgment is affirmed in part and reversed in part. The cause is remanded for a new trial on the claims of breach of fiduciary duty and conversion as well as the pending counterclaim.

Judgment affirmed in part
and reversed in part,
and cause remanded.

COONEY, J., concurs.

DYKE, J., dissents.

ANN DYKE, Judge, dissenting.

{¶ 42} I respectfully dissent. I would decline to address the merits of plaintiff's single assignment of error and dismiss the appeal sua sponte. *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 87, 541 N.E.2d 64. It is well settled that an appellate court may only review judgments that constitute final, appealable orders. Id.

{¶ 43} On February 6, 2004, plaintiff filed a complaint against defendants asserting claims of breach of fiduciary duty, fraud, breach of duty of good faith and fair dealing, and conversion. On March 17, 2004, defendants filed their answer and a counterclaim alleging that plaintiff violated a noncompete agreement. On February 4, 2005, the trial of this matter commenced. After plaintiff presented its case, defendants moved for a directed verdict. The trial court granted defendants' motions for directed verdict as to all of plaintiff's claims. The court issued a judgment entry to this effect on February 4, 2005.

{¶ 44} Thereafter, plaintiff appealed the trial court's directed verdict to this court. In *Tinter v. Lucik,* Cuyahoga App. No. 86026, 2005-Ohio-5858, 2005 WL 2885970, we dismissed the appeal, finding that it was not a final, appealable order. We reasoned that defendants' counterclaim still existed and that the judgment entry from the trial court did not contain the language "no just reason for delay" as required by Civ.R. 54(B).

{¶ 45} In response, plaintiff filed a motion for 54(B) language with the trial court and requested that the court add the language required pursuant to Civ.R. 54(B) to its judgment entry dated February 4, 2005. On December 6, 2005, defendants filed a motion to set a trial date on their counterclaim. On July 28, 2006, the trial court granted plaintiff's motion and added the language "no just reason for delay."

{¶ 46} By adding the words "no just reason for delay," the trial court intended this make the order immediately appealable pursuant to Civ.R. 54(B). Civ.R. 54(B) states:

{¶ 47} "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."

{¶ 48} The inclusion of this language, however, does not convert an otherwise interlocutory order into a final, appealable order. *Chef Italiano Corp.,* 44 Ohio St.3d at 89–90, 541 N.E.2d 64. Partially resolved issues are not final and appealable even though the judgment entry contains the language "no just reason

for delay" when an adjudicated claim that has a common body of interest remains pending before a trial court. *Salata v. Vallas,* 159 Ohio App.3d 108, 2004-Ohio-6037, 823 N.E.2d 50. As the court in *Dodrill v. Prudential Ins. Co.,* Jackson App. No. 05CA13, 2006-Ohio-3674, 2006 WL 2006184, stated:

{¶ 49} " 'The trial court should include the express determination that there is no just reason for delay when a judgment has been entered as to one or more but fewer than all the claims of the parties only when the matter adjudicated is clearly independent of other rights and liabilities, because the trial court's power to modify the order[,] as may be necessary due to subsequent events[,] is otherwise substantially decreased. The trial court abuses its discretion in attempting to make the disposition of only part of the claims appealable by the addition of Civil Rule 54(B) language when the parties and issues contained in that order are so related and interconnected with an interlocutory order that, for purposes of judicial economy, they should be considered together. In that event, the appellate court is without jurisdiction to entertain the appeal until all of the intertwined claims are final.' "

{¶ 50} Id. at ¶ 10, quoting McCormac & Solimine, Ohio Civil Rules Practice (3d Ed.2003) 351, Section 13.17.

{¶ 51} In the instant matter, the trial court's incantation of the language "no just reason for delay" did not convert its interlocutory order of February 4, 2005 into a final, appealable order. Defendants' counterclaim is not separate and distinct from plaintiff's claims. Instead, all the claims are intertwined because all arise out of the same business relationship. More specifically, defendants' counterclaim alleges violations of a noncompete agreement. However, a written noncompete agreement is not provided in the record or even referred to in the counterclaim. Likewise, the counterclaim fails to indicate whether the alleged non-compete agreement was oral. Without such information, we cannot find the noncompete agreement, and consequently, the counterclaim, separate and distinct from the business relationship plaintiff complains of in her complaint. Accordingly, because defendants' counterclaim has yet to be resolved, I would dismiss the instant action for lack of a final, appealable order in the interests of judicial economy and to avoid piecemeal litigation.