**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0085n.06
Filed: January 29, 2008

**No. 06-6586**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ELVIS E. PENDLETON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| OVER THE TOP, L.L.C., | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUHRHEINRICH, SUTTON, and GRIFFIN, Circuit Judges.

SUTTON, Circuit Judge. Over the Top challenges the district court's denial of its post-trial motions claiming that the evidence does not support the jury's verdict and damages award of $185,000 arising from a barroom fight. Because the district court did not err or otherwise abuse its discretion in denying the motions, we affirm.

I.

In 2003, Elvis Pendleton and his wife visited Kickers, a night club owned and operated by Over the Top in Clarksville, Tennessee. After a fight broke out between Pendleton and other patrons, a Kickers bouncer restrained Pendleton and tackled him to the ground. Four or five

additional bouncers joined in and, according to Pendleton, began hitting him. Pendleton suffered injuries in the ensuing ruckus, including a "blowout fracture" to "the bone underneath [his] eye."

Pendleton filed a complaint against Over the Top and its bouncers in federal court on diversity grounds—Elvis was not from Tennessee—alleging state law torts and seeking compensatory and punitive damages. A jury found Over the Top (1) liable for assault, battery, negligence and false imprisonment and (2) not liable for extreme and outrageous conduct. It also found Pendleton had not acted negligently, and it awarded him compensatory damages of $185,000. Over the Top moved for judgment as a matter of law, *see* Fed. R. Civ. P. 50(b) or, alternatively, for a new trial or a remittitur of damages, *see* Fed. R. Civ. P. 59, claiming that the evidence did not support the verdict or award. Reasoning that the "verdict against Defendant is supported by the evidence" and that the "damages awarded by the jury do not clearly exceed the maximum amount which the jury could reasonably find to be compensatory for the Plaintiff's injuries," the court denied the motions.

II.

We review a district court's denial of a Rule 50(b) motion de novo. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). When, in a diversity action, "a Rule 50(b) motion is premised on a challenge to the sufficiency of the evidence, we apply the standard of review employed by the courts of the state whose substantive law controls the action, Tennessee in this instance." *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 993 (6th Cir. 2004). Under Tennessee law,

judgment as a matter of law is proper only if, after "tak[ing] the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary," the court concludes that "reasonable minds could not differ as to the conclusion to be drawn from the evidence." *Id.* (internal quotation marks omitted); *see also Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). We review a district court's denial of a Rule 59 motion for a new trial or a remittitur of damages for abuse of discretion. *See Chandler v. Specialty Tires of Am., Inc.*, 283 F.3d 818, 824 (6th Cir. 2002); *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993). A trial court should deny a motion for a new trial "if the verdict is one which could reasonably have been reached," *United States v. L.E. Cooke Co.*, 991 F.2d 336, 343 (6th Cir. 1993), and should likewise deny a motion for remittitur unless the jury award "clearly exceeds the amount which . . . was the maximum that a jury could reasonably find to be compensatory for the plaintiff's loss," *Roush*, 10 F.3d at 397 (internal quotation marks and emphasis omitted).

A reasonable jury could fairly conclude that Pendleton did not act negligently and that the evidence supported the verdict. Pendleton and his wife, Sara, recalled the evening this way at trial. As Pendleton and Sara were "moving off the dance floor" following a minor skirmish with other patrons, a Kickers bouncer grabbed Pendleton from behind, and the two tripped to the ground. Pendleton was "kind of dazed" from the fall, and, as he tried to get up, four or five additional bouncers encircled him and "began to hit him." Pendleton never threw a punch, but was the recipient of many and ultimately was "beat . . . to a pulp so that he was like a noodle" when the bouncers "drug him down the stairs" and "laid him out on the concrete" outside the club. Doctors

treated Pendleton for a "laceration to his face" and a "blown out . . . orbital eye socket." A patron corroborated some of this testimony. He testified he never saw Pendleton "striking any blows or anything like that" and that the bouncers' behavior "just looked like it was in excess . . . like somebody was getting beat up."

The bouncers told a different story. After a patron reported to a bouncer that "Pendleton [had] grabbed somebody's rear end on the dance floor," the bouncer approached Pendleton, and Pendleton responded by throwing a beer bottle at the bouncer. As that bouncer went to get assistance, another bouncer saw Pendleton fighting with a patron and tackled him to the ground. Four or five additional bouncers joined in to help restrain Pendleton, and Pendleton was told that he could get up as soon as he calmed down. After Pendleton appeared to calm down and the bouncers helped him off the ground, he again started "swinging wildy" with his fists and hit at least one of the bouncers. The bouncers again restrained him and, after rolling him over, "realized he had been cut." Once they had calmed Pendleton down again, the bouncers "carried him out of the club," "appl[ied] first aid to him" and called for the police and an ambulance. The bouncers disclaimed ever hitting or kicking Pendleton.

In the face of these conflicting accounts, it fell to the jury to determine who was telling the truth. As the verdict suggests, the jury believed Pendleton's testimony, and Over the Top has given us no convincing reason to disrupt the jury's verdict or the district court's denial of its post-trial motions. Indeed, the company's argument, if you can call it that, simply replays favorable evidence that the jury heard and apparently discounted or outright rejected—paying no regard to the inferences

and implications we must make at this stage of the case. It argues, for example, that Pendleton must have been negligent because some witnesses "swore, under oath," that Pendleton threw beer bottles, swung his fists and continued to fight when asked to stop. But Pendleton and Sara testified to the contrary, and a patron testified he never saw Pendleton throw a punch. The company likewise claims that Pendleton was drunk and out of control. But Pendleton, who admitted that he had been drinking, that his blood alcohol level was twice the legal limit in Tennessee and that marijuana was present in his system, testified that he "wasn't drunk" and that he "felt perfectly fine" prior to the incident. Sara also testified that Pendleton was "not acting drunk" and that, while Pendleton was "[m]aybe a little resistive" to getting removed from the club, "there was no type of retaliation . . . on his p[art]." On this record, we cannot say that the jury's verdict was unreasonable. And for the same reason, we have no basis for reducing the jury award due to Pendleton's alleged, but not found, negligence.

Over the Top insists that the district court erred because "a new trial must be granted whenever the trial court, acting as the thirteenth juror, disagrees with a jury's comparative fault allocation." *Jones v. Idles*, 114 S.W.3d 911, 915 (Tenn. 2003). But in making this argument, the company overlooks the standard of review. Although a "federal court exercising its diversity jurisdiction applies the standard for a *directed verdict* used by the courts of the state whose substantive law governs the action," "this circuit follows federal, not Tennessee, law on the standard for granting a *new trial* in a diversity case. Tennessee courts allow the trial judge to sit as a 'thirteenth juror' when passing upon a motion for a new trial. Federal diversity courts sitting in

Tennessee do not apply this standard, but instead apply the federal standard." *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1248 & n.2 (6th Cir. 1984) (emphases added).

When viewed through the prism of the correct standard, Over the Top's argument fails. The company has not shown that the district court abused its discretion in leaving the jury's verdict and award undisturbed. While we can understand why Over the Top would have liked the district court judge to sit as a thirteenth juror, that was not the judge's role. Nor is it ours.

III.

For these reasons, we affirm.