OPINION
{¶ 1} Plaintiff-appellant Wanda Wheeler appeals from a summary judgment rendered in favor of defendants-appellees Scarlett Lee Johnson, a.k.a. Scarlett Lee Walker ("Johnson"), Air Dan, Inc. ("Air Dan"), and Jade, Inc. ("Jade"). Wheeler contends *Page 2 
that the trial court erred because there is a genuine issue of material fact whether Wheeler acquired a minority share interest in Air Dan and Jade due to her ownership of shares in a predecessor corporation.
 {¶ 2} We conclude that the trial court erred in rendering summary judgment in favor of Johnson, Air Dan, and Jade. The undisputed facts indicate that Wheeler's alleged ownership interest was not reflected on the books of Air Dan or Jade. However, the alleged breach of fiduciary duty was based on the formation of two new corporations and the transfer of the predecessor corporation's assets without Wheeler's input or consent. Summary judgment was not appropriate, since genuine issues of material fact exist on the question of Wheeler's alleged equitable ownership. Accordingly, the judgment in favor of Air Dan, Jade, and Johnson is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 3} In April 2006, Wheeler filed a complaint for breach of fiduciary duty against Johnson, Air Dan, and Jade. Wheeler alleged in the complaint that she is a minority shareholder in Air Dan and Jade, and that Johnson, as majority shareholder, had committed various breaches of fiduciary duty, including failure to issue stock certificates to Wheeler, failure to adopt a code of corporate regulations, failure to hold elections of directors, and failure to pay Wheeler dividends. Wheeler also filed a motion for preliminary and permanent injunction, asking the court to prevent Johnson from controlling the income of Air Dan or from using her majority shares to unlawfully divest Wheeler of minority shareholder rights.
 {¶ 4} The trial court held a preliminary injunction hearing in August 2006, but *Page 3 
overruled the motion for preliminary injunction, based on Wheeler's failure to prove by clear and convincing evidence that she had any interest in Air Dan that would entitle her to relief.
 {¶ 5} In November 2006, Johnson, Air Dan, and Jade filed a motion for summary judgment, claiming that Wheeler had no ownership interest in Air Dan or Jade. In an affidavit attached to the motion, Johnson stated that Jade and Air Dan, d.b.a. K.C. Lounge, were both Ohio corporations, and that Johnson had been the sole shareholder since the corporations were created. Johnson also stated that Wheeler had never held shares in either corporation. According to Johnson, Wheeler had been a former shareholder of a predecessor corporation that operated the K.C. Lounge. Johnson indicated, however, that Wheeler had sold her shares to Johnson many years earlier.
 {¶ 6} Wanda Wheeler's deposition was taken in May 2006. Wheeler indicated that Scarlett Johnson had originally inherited shares of a corporation called KAP, Inc. ("KAP") from her mother, Carol Penrod, after Penrod died in the early 1980's. Penrod was Donald Wheeler's ex-wife. Donald is Scarlett's father; Wanda is Donald's wife and is also Scarlett's step-mother.
 {¶ 7} KAP operated a business known as the KC Lounge. At some point after Penrod's death, another of Penrod's daughters approached Donald Wheeler and asked him to help operate the lounge because it was losing money. Wanda Wheeler also helped out from time to time with the business. Wanda stated that she acquired 300 shares in KAP because she had loaned money to the corporation. Wheeler described this as a 20% interest. Johnson also had an interest in KAP, but the precise amount of her interest is unclear. Although Johnson originally inherited only one-tenth of KAP, she appears to have later owned between 60 and 80% of the shares in KAP. *Page 4 
 {¶ 8} In 1992, KAP sold its business to GIZ, Inc. ("GIZ), which continued to operate the KC lounge. According to documents furnished to the Division of Liquor Control, the purchase price was as follows: $34,000 for KAP's land installment contract rights to real property known as 4766 Airway Road; $1,000 for fixtures and equipment; and $1,000 for a liquor permit. After a down payment of $1,000, the remainder of the purchase price was to be paid at $1,000 per month for thirty-five consecutive months.
 {¶ 9} Scarlett Johnson (then known as Scarlett Wheeler) was listed as the sole shareholder of GIZ on documents submitted to Liquor Control. These documents also indicate that Johnson owned 750 shares. According to Wanda Wheeler, GIZ was created, in part, because of money KAP owed to workers' compensation. The transaction was also allegedly structured with Johnson as the sole shareholder because Donald Wheeler had problems with Alcoholic Beverage Control ("ABC").
 {¶ 10} Wheeler claimed in her deposition that she owned 300 shares in GIZ, but this information was concealed from ABC. Wheeler indicated that Johnson was aware of this tactic, and agreed. Wheeler admitted that she had signed a paper stating that she sold 300 shares in GIZ to Johnson for $300. However, she claimed that the paper was signed for "ABC" purposes, that she did not receive $300 for the shares, and that she still retained the 300 shares. Again, Wheeler testified that Johnson was aware of this and agreed with the course of action.
 {¶ 11} Wheeler admitted in her deposition that she had no shares in either Air Dan or Jade, and that she had no paperwork showing that she had an ownership interest in these corporations.
 {¶ 12} In 1996, GIZ sold assets, including the liquor permit and the right to use the *Page 5 
name "KC Lounge," to Air Dan for $1,000. At the time, Johnson was still listed as the sole shareholder of GIZ on documents filed with Liquor Control. Johnson was also listed as the sole shareholder in Air Dan. The documents filed with the Liquor Control list Jade as the owner of the real property on which the KC Lounge was being operated. They also indicate that Jade was leasing the property to Air Dan for a monthly rental fee.
 {¶ 13} In June 1997, the liquor permit was transferred from GIZ to Air Dan, which operated the KC Lounge from that time forward. There are no documents in the record that indicate precisely when Jade purchased the real estate or what consideration was paid to GIZ.
 {¶ 14} For several years prior to 2003, Johnson paid Wheeler $450 per week in the form of payroll checks written from the Air Dan account. Wheeler indicated that she did not do any work to earn that money, and that the money was based on her 20% interest in Air Dan. Johnson denied that this money represented payment of dividends for Wheeler's ownership in the bar. Johnson claimed instead that she paid the money to keep peace in the family and to have a father-daughter relationship. Johnson also testified that she had paid Wheeler $300 for Wheeler's shares in GIZ.
 {¶ 15} In January 2007, Wheeler filed a response to Johnson's summary judgment motion and attached two affidavits. In her own affidavit, Wheeler stated that she had been a minority shareholder of GIZ and had conveyed 300 shares in GIZ to Johnson. Wheeler claimed that she had retained 150 shares of GIZ and did not consent to the transfer of her 150 shares of stock to Air Dan. Wheeler also indicated that she had never been a shareholder in either Air Dan or Jade.
 {¶ 16} The second affidavit attached to Wheeler's response was signed by Donald *Page 6 
Wheeler. Donald stated that in the past, he had transferred shares of GIZ to both Wheeler and Johnson. Donald also reiterated the statements that Wheeler made in her affidavit regarding Wheeler's retention of the 150 shares of GIZ and lack of consent to the transfer of her interest to Air Dan and Jade.
 {¶ 17} Both the Wheelers attached documents to their affidavits purporting to show that Wanda Wheeler was sending Johnson a share of profits from GIZ after KAP was sold to GIZ. However, the attached checks are from 1992, more than thirteen years before the lawsuit was filed. The checks are also written on the account of "KAP, Inc.," not GIZ.
 {¶ 18} Although the trial court held a preliminary injunction hearing, no transcript of the hearing was filed. Accordingly, the trial court indicated that it would decide the summary judgment motion solely on the pleadings, the depositions of Wheeler and Johnson, and affidavits filed in connection with the summary judgment motion. After reviewing those materials, the trial court found that Wanda Wheeler had no interest in Air Dan or Jade, and, therefore, no claim as a minority shareholder. The court also concluded that Wheeler lacked standing to bring the action. Wheeler appeals from the summary judgment rendered in Johnson's favor.
 II {¶ 19} Wheeler's sole assignment of error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED IN SUSTAINING DEFENDANT/APPELLANT SCARLETT LEE JOHNSON'S MOTION FOR SUMMARY JUDGMENT (APRIL 20, 2007 DECISION, ORDER AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT)."
 {¶ 21} Under this assignment of error, Wheeler contends that there are at least *Page 7 
issues of fact with regard to whether she acquired a minority interest in Air Dan and Jade as a result of shares that she held in GIZ. Accordingly, Wheeler contends that the trial court erred in rendering summary judgment in favor of Johnson, Air Dan, and Jade.
 {¶ 22} "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." Smith v. FiveRivers MetroParks (1999), 134 Ohio App.3d 754, 760, 732 N.E.2d 422. "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." GNFH, Inc. v. W. Am. Ins. Co.,172 Ohio App.3d 127, 133, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16.
 {¶ 23} To establish a breach of fiduciary duty, a complaining party must prove: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." Harwood v. Pappas Assoc, Inc., Cuyahoga App. No. 84761, 2005-Ohio-2442, at ¶ 26, citing Strock v.Pressnell (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235.
 {¶ 24} The facts presented in this case indicate that Air Dan and Jade are close corporations, which have been defined as entities with "few shareholders and whose corporate shares are not generally traded on a securities market." Tinter v. Lucik, 172 Ohio App.3d 692, 698,2007-Ohio-4437, 876 N.E.2d 1026, at ¶ 23. Ownership of close corporations is "limited to a small number of people who are dependent on each other for the enterprise to succeed." Id. As a result: *Page 8 
 {¶ 25} "A fiduciary duty exists between shareholders of a close corporation, particularly between majority and minority shareholders. * * * That fiduciary duty `imposes on the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.' * * * In particular, a majority shareholder has a fiduciary duty not to misuse her power by promoting her personal interests at the expense of corporate interests." Id. (Citations omitted.) See, also,Crosby v. Beam (1989), 47 Ohio St.3d 105, 107-08, 548 N.E.2d 217.
 {¶ 26} The undisputed evidence in the record before us indicates that Wanda Wheeler was never issued shares in Air Dan or Jade. However, there is evidence, although disputed, that Wheeler was a shareholder in GIZ, despite the fact that her shares do not appear on the corporate records. "A person may be considered a shareholder even though the corporation's books do not so indicate." * * * The fact that a purchaser of shares fails to have the shares transferred into his name upon the corporation's books does not deprive him of the beneficial interest in the shares." Smith v. Koehler (1992), 91 Ohio App.3d 337, 340,632 N.E.2d 914.
 {¶ 27} The alleged breach of fiduciary duty in this case was Johnson's formation of two new corporations and the transfer of GIZ's assets to those corporations without the input or consent of Wheeler, who was an alleged minority shareholder in GIZ. Under the circumstances, one would not expect Wheeler to have been issued shares of stock in either Jade or Air Dan, because formation of these separate corporations without *Page 9 
Wheeler's participation is the very basis of the alleged breach of fiduciary duty.
 {¶ 28} Admittedly, Johnson contends that Wheeler sold her shares in GIZ prior to the time that Jade and Air Dan were formed. However, Wheeler disputes those facts and the determination of this issue will be based on witness credibility, which is not appropriately resolved on summary judgment. We have stressed that "' [w]hen reviewing a motion for summary judgment, a court must be careful not to weigh the evidence or judge the credibility of witnesses. * * * Instead, it must consider all of the evidence and reasonable inferences that can be drawn from the evidentiary materials in favor of the nonmoving party.'" McDaniel v.Daly, Montgomery App. No. 22453, 2008-Ohio-2080, at ¶ 74 (citation omitted).
 {¶ 29} The factual materials, construed in Wheeler's favor, indicate genuine issues as to Wheeler's ownership in GIZ. As an initial point, the alleged $300 purchase price for a 20% share in GIZ does not make sense, in view of the fact that KAP's assets had recently been sold to GIZ for $36,000. Both Wheeler and Johnson agree that Wheeler had at least 300 shares of stock in GIZ at one time.[1] However, Johnson did not present evidence of a significant decrease in assets or income to justify such a small price for a 20% share of GIZ. Johnson also did not claim that the shares were a gift. Furthermore, while Johnson's weekly payments to Wheeler between 1996 and 2003 might be attributed to a desire to keep family peace, they are also consistent with payment of profit to a shareholder, *Page 10 
particularly since there is no evidence that Wheeler performed services during that time for either Air Dan or Jade.
 {¶ 30} In moving for summary judgment, Johnson contended that Wheeler came before the court with "unclean hands." In this regard, Johnson remarked on an observation the trial court apparently made at the end of the preliminary injunction hearing. At that time, the trial court apparently indicated that over the course of many years, Wheeler and her husband had masterminded a series of stock transfers and corporate ownership maneuvers to avoid paying tax obligations. Johnson contends that Wheeler should be precluded from recovery because these actions demonstrate unclean hands.
 {¶ 31} "The cardinal maxim of equity jurisprudence, that he who comes into equity must come with clean hands, requires that the party seeking equitable relief not be guilty of reprehensible conduct with respect to the subject matter of the suit.'" Keybank Nat. Assn. v. EnvironmentFirst Services Co., Inc., Ashtabula App. No. 2001-A-0064, 2002-Ohio-3126, at ¶ 23. See, also, Greer-Burger v. Temesi,116 Ohio St.3d 324, 332, 2007-Ohio-6442, 879 N.E.2d 174, at ¶ 29, n. 5.
 {¶ 32} While Wheeler may ultimately be proven to have had "unclean hands," this is an affirmative defense that Johnson failed to raise in her answer or in an amendment to the answer. Accordingly, we cannot consider the point at this juncture. See, e.g., Patterson v.Blanton (1996), 109 Ohio App.3d 349, 355-356, 672 N.E.2d 208 (noting that "unclean hands" is an affirmative defense that must be raised in an answer or amended pleading). Notably, the trial court was also precluded from considering this matter in ruling on summary judgment.
 {¶ 33} The trial court indicated in its summary judgment decision that it was not *Page 11 
bound by prior findings that it made in connection with the preliminary injunction hearing, due to differences in burden of proof. The court then proceeded to decide the matter on the materials presented in connection with the summary judgment motion. However, the trial court appears to have impliedly considered the issue of unclean hands, since its decision was based solely on the fact that Wheeler was not a shareholder of record of either Air Dan or Jade. This holding either weighs credibility or precludes recovery based on "unclean hands," or both, because it ignores genuine issues of material fact. As we said, these issues concern whether a breach of fiduciary duty occurred in connection with the formation of Jade and Air Dan, and the sale of GIZ's assets. We express no view on the ultimate resolution of these issues, beyond noting that the financial dealings in this case were unorthodox.
 {¶ 34} The trial court also erred in finding that Wheeler lacked standing to bring the action. "Standing is a threshold question for the court to decide in order for it to proceed to adjudicate the action."State ex rel. Jones v. Suster, 84 Ohio St.3d 70, 77, 1998-Ohio-275,701 N.E.2d 1002. To decide if an action has been brought by the real party in interest, "courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." Shealy v. Campbell (1985),20 Ohio St.3d 23, 25, 485 N.E.2d 701. As we noted, Wheeler possesses a substantive right to relief, even though she was not listed as a shareholder on the books of Air Dan and Jade. The fact that her interest was not reflected is the basis of her claim for breach of fiduciary duty.
 {¶ 35} Wheeler's single assignment of error is sustained.
 III *Page 12 {¶ 36} Wheeler's single assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and DONOVAN, JJ., concur.
Copies mailed to:
Mark A. Fisher
Gary C. Schaengold
Hon. Michael T. Hall
[1] As noted in the factual statement, a discrepancy exists regarding the precise number of shares Wheeler owned in GIZ. In her deposition, Wheeler claimed to have owned 300 shares, but changed that figure to 450 in an affidavit filed in connection with summary judgment. Nonetheless, what is clear from both Wheeler's deposition and affidavit is that she denies having transferred all her interest in GIZ to Johnson. Accordingly, a material factual dispute exists and the trial court should not have rendered summary judgment in Johnson's favor. *Page 1