NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0147n.06

Case No. 18-3590

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DOMENICO TAGLIERI, | ) | **FILED** |
|  | ) | Mar 27, 2019 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| MICHELLE MONASKY, | ) |  |
|  | ) |  |
| Defendant-Appellee. | ) |  |

BEFORE: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. The marriage between Domenico Taglieri and Michelle Monasky produced "a hell, [a]n age of discord and continual strife[.]" William Shakespeare, *The First Part of King Henry VI*, act 5, sc. 5. And that tumultuous marriage is not new to our court. The parties have already spent years fighting over where to litigate their child-custody dispute. *See generally Taglieri v. Monasky*, 907 F.3d 404 (6th Cir. 2018) (en banc). Now the fight continues over various tort claims that each spouse brought against the other. The district court granted Monasky summary judgment on Taglieri's conversion claim, and then a jury awarded Monasky damages on her counterclaims for assault and battery. We affirm.

I.

Domenico Taglieri, an Italian citizen, met Michelle Monasky while studying medicine at the University of Illinois. The two started dating and soon thereafter got married. But the marital

bliss between Taglieri and Monasky broke down when the couple relocated to Italy two years after the wedding. Taglieri became obsessed with perceived flaws in Monasky's physical appearance because he thought he "deserve[d] a beautiful wife." R. 105-1, Pg. ID 2283. As a result, Taglieri started abusing her. Taglieri would grab Monasky's face, inspect her for acne, and hit her if he found any blemishes. He would forcefully remove hair from her arms with hot wax. And sometimes Taglieri would demand sexual acts and start hitting Monasky if she did not comply. Although Monasky eventually became pregnant, the abuse did not end. At one point during Monasky's pregnancy, Taglieri was pricked by an infected Hepatitis C needle at work—but still demanded that Monasky have sex with him. Another time he became so violent that he commanded Monasky to "spread [her] legs or [he would] spread them for [her]." Appellee Br. 14; *Taglieri v. Monasky*, 876 F.3d 868, 871 (6th Cir. 2017), *vacated on other grounds*, 907 F.3d 404 (6th Cir. 2018) (en banc).

Monasky finally fled back to the United States. When she did, she cut off Taglieri's access to the couple's bank account. This account contained several commingled funds: Monasky's life savings, both spouses' salaries, and separate money that Taglieri had transferred into the account from various other banks. Although the couple titled the account solely in Monasky's name, she provided Taglieri with access to the account during their marriage. That access ended when Monasky left him.

In response, Taglieri filed a conversion claim against her in federal court in Ohio, and Monasky counterclaimed for assault and battery. The district court granted Monasky's motion for summary judgment on the conversion claim, while the assault and battery claims went to trial. A jury found in Monasky's favor on those claims and awarded her $100,000 in damages. Taglieri now appeals.

II.

Taglieri argues that the district court should not have heard Monasky's counterclaims against him. First, he claims that the district court did not have personal jurisdiction over him because he lacked sufficient "minimum contacts" with Ohio. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). But when Taglieri filed his conversion claim in Ohio federal court, he voluntarily submitted himself to that court's jurisdiction to decide "all the issues embraced in the suit"—even Monasky's counterclaims—and waived any personal jurisdiction defense he might have otherwise had. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982).

Second, Taglieri invokes *forum non conveniens* and claims that Monasky's counterclaims should have been litigated in Italy, not Ohio. *Forum non conveniens* only allows a federal court to decline jurisdiction when it serves the interests of the parties, the court, and justice to try the matter in another forum. *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018). Taglieri contends that, since many acts alleged in Monasky's assault and battery claims took place in Italy, the district court should have dismissed those claims, thereby requiring Monasky to seek justice in the Italian courts. But Monasky's choice of forum for her assault and battery claims deserves deference. *Duha v. Agrium, Inc.*, 448 F.3d 867, 873–74 (6th Cir. 2006). To overcome that deference, Taglieri had to show that litigating in Ohio would result in "such oppressiveness and vexation to [him] as to be out of all proportion to [Monasky's] convenience." *Id.* at 874. Taglieri did not present any evidence that Ohio would inconvenience him. In fact, he *chose* to litigate his conversion claim in Ohio, then waited until *after* he lost at trial to even argue that Ohio would be an inconvenient forum for the assault and battery claims. *See generally Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*,

545 F.3d 357, 364 (6th Cir. 2008) (noting that a district court has inherent authority to consider *forum non conveniens* throughout the litigation). Accordingly, the district court did not abuse its discretion in denying his *forum non conveniens* claim. *See id.* at 363 (reviewing *forum non conveniens* claims for abuse of discretion).

## III.

Taglieri also brings numerous challenges related to the merits of Monasky's assault and battery counterclaims. We consider each in turn.

## A.

First, Taglieri contends that the district court erroneously applied Ohio law instead of Italian law. On the eve of trial, Taglieri filed a motion requesting that the court apply Italian law to Monasky's counterclaims. Initially, the district court agreed. But after Monasky moved for reconsideration, the district court reversed itself on the morning of trial and applied the law of the forum, Ohio. Taglieri gives two reasons why he thinks the district court erred in making this call. We review his arguments de novo. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 865 (6th Cir. 2006).

*Foreign law*. First, Taglieri argues that the district court should have applied Italian law under choice-of-law principles. In Ohio, if a conflict exists between the law of the forum and foreign law, the trial court must weigh which forum has a greater interest in the litigation. *See Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). Taglieri had the burden to demonstrate (1) the content of Italian law and (2) that Italian law conflicts with Ohio law. *See Cross v. Carnes*, 724 N.E.2d 828, 836 (Ohio Ct. App. 1998); Restatement (Second) Conflict of Laws § 136 cmt. f (1971) ("[T]he party who claims that the foreign law is different from the local law of the forum has the burden of establishing the content of the foreign law."); *see also Bel-Ray*

*Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). But Taglieri could neither delineate Italian law nor explain how it conflicted with Ohio law. Indeed, the parties offered completely contradictory views on what Italian law said. And both Taglieri and Monasky had authorities on Italian law supporting their contrasting positions. Faced with this conflicting evidence, the district court reasonably found Italian law "impossible to discern." R. 105-1, Pg. ID 2271–72. Thus, it did not err in holding that Taglieri failed to meet his burden.

*Due process*. Second, Taglieri contends that applying Ohio law violated his due process rights. Monasky's current claims relate to abuse that occurred in both Italy and Ohio. Monasky pursued these allegations on two fronts: (1) she filed her counterclaims in this litigation, and (2) she filed a criminal complaint when she fled Italy in 2015. Both Taglieri and Monasky agree that the Italian courts "archived" her complaint, but they do not agree about the effect of the "archival." Taglieri claims that when an Italian court archives a claim, it effectively dismisses it. And, he says, once Italian courts dismiss a complaint, the evidence underlying that complaint is no longer admissible in a court of law.

In front of the district court, Taglieri argued that since the abuse was inadmissible under Italian law, it was irrelevant at trial. The district court initially agreed with Taglieri. But when the parties disputed what "archived" meant at a hearing before trial, the district court opted to apply Ohio law rather than Italian law. And since Ohio law does not recognize that "archived" means "dismissed," the district court allowed the evidence about abuse in Italy to come in since it was direct evidence of Monasky's assault and battery claims.

Taglieri argues that this change in law "pulled the rug from beneath his feet" and deprived him of his "fundamental right to a fair trial." Reply Br. 3–4. As the district court noted, however, evidentiary motions are routinely decided on the day of trial. *See Luce v. United States*, 469 U.S.

38, 41–42 (1984) (observing that evidentiary motions are "subject to change" as the case unfolds and "the district judge is free . . . to alter a previous [evidentiary] ruling"). And trial courts frequently change their evidentiary rulings when they learn of new facts or law. Taglieri offers no authority showing that ruling on an evidentiary motion on the day of a civil trial violates due process.

Instead, Taglieri argues the district court was biased against him and wanted to hand Monasky a "win." Yet to make this argument he mischaracterizes comments made by the district court. The district court stated that Monasky was frustrated with litigation in Italy and wanted (like any litigant) to get a "win" in the United States. R. 105-1, Pg. ID 2231. In making these comments, however, the district court did not imply that it would *give* Monasky a win. The court simply related the litigious history between the parties and lamented that they could not "reach some accommodation." *Id.* at 2232. And the district court had already ruled in Taglieri's favor in other matters—including the all-important dispute over where to litigate child custody. *Taglieri v. Monasky*, No. 1:15 CV 947, 2016 WL 10951269, at \*14 (N.D. Ohio Sept. 14, 2016), *aff'd en banc*, 907 F.3d 404 (6th Cir. 2018). Simply put, this isolated comment is not evidence of bias. Taglieri's challenge fails. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876–77 (2009) (noting that the Due Process Clause is only violated when there was a high probability of judicial bias).

## B.

Taglieri next attacks the jury verdict itself with two separate arguments.

*Prejudicial evidence.* First, Taglieri asserts that the district court should not have permitted Monasky's parents to testify about an admission he made. At trial, Monasky's father detailed a phone call he had with Taglieri where Taglieri admitted, "[Y]eah, I smacked her. And I'm not

ashamed of it." R. 105-2, Pg. ID 2462. And Monasky's mother testified that Taglieri told her on the phone that he had "smacked [Monasky] like a mother smacks a child." R. 105-2, Pg. ID 2447. Taglieri now claims that the district court should have excluded this evidence as unfairly prejudicial. We review this claim for an abuse of discretion. *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011).

A district court may exclude evidence if that evidence's probative value is "substantially outweighed by a danger of . . . unfair prejudice" or of "misleading the jury." Fed. R. Evid. 403. Taglieri claims that the testimony was unfairly prejudicial because that evidence detailed events that could not form the basis of Monasky's assault and battery claims. Monasky had one year to bring assault and battery claims against Taglieri. Ohio Rev. Code Ann. § 2305.111(B). Since this litigation started in May 2015, that means her claims could only be based on events that happened after May 2014. *See Nat'l Retailers Mut. Ins. Co. v. Gross*, 50 N.E.2d 258, 259 (Ohio 1943). And Taglieri states that the alleged blows occurred before May 2014.

But even if the incidents occurred before May 2014, they were not the only evidence that the jury had before it. The jury also heard about several similar events that occurred *after* May 2014. For instance, Monasky testified that Taglieri hit her daily, and, one time while she was pregnant, he got on top of her and "smacked the hell out of [her]." R. 105-2, Pg. ID 2383. He did not stop at smacking, either; he "punched [her] in the sides of [her] head." R. 105-1, Pg. ID 2296. Nor did he stop after the baby was born. Taglieri continued to hit Monasky for minor errors, claiming she needed to "learn a lesson." R. 105-2, Pg. ID 2336. One time he even knocked a baby bottle out of her hand. And Monasky's parents testified that Monasky told them about several of these incidents soon after they happened—testimony that Taglieri does not dispute. So even if the court erred in admitting testimony about his admission, the error was harmless considering this

other evidence. *See United States v. Collins*, 799 F.3d 554, 571–72 (6th Cir. 2015); *see also United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009) (noting that contested statements "were not unduly prejudicial" when "they were merely cumulative"). In short, even if the testimony was admitted in error, it was harmless.

*Sufficiency of the evidence.* Second, Taglieri claims that insufficient evidence supported the jury's verdict on the assault claim. He challenged that verdict in a post-trial motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). The district court denied the motion, and we review that decision de novo. *McCombs v. Meijer, Inc.*, 395 F.3d 346, 352 (6th Cir. 2005).

In diversity cases like this one, sufficiency motions are evaluated based on the law of the forum state—here, Ohio. *See Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 483 (6th Cir. 2009). Under Ohio law, Monasky needed to show: (1) Taglieri willfully threatened her, attempted to harm her, or offensively touched her and (2) did so in such a way that Monasky reasonably felt afraid that he would follow through. *See Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154 (Ohio Ct. App. 1993). Taglieri claims Monasky failed to meet her burden. He argues that her testimony merely referenced physical acts with no accompanying fear, or she testified about a generalized fear without proving that Taglieri had acted with the intent to harm her or offensively touch her. In other words, she did not sufficiently link the two distinct elements of her assault claim.

Taglieri is incorrect. Monasky provided plenty of evidence connecting Taglieri's acts with her fear. Monasky testified about several events where Taglieri physically hit her. He grabbed her face and hit her if she had any acne. He did this so much that Monasky came to expect that Taglieri would physically abuse her for any perceived flaw in her appearance. For example, when Taglieri told her that she needed to wax her arms, Monasky "knew that [Taglieri] was going to hit

[her] again if [she] didn't go along with him." R. 105-1, Pg. ID 2288. These acts made her "more and more fearful" about how aggressive Taglieri would become. R. 105-2, Pg. ID 2338. Sometimes, Taglieri would get so violent that Monasky felt compelled to perform sexual acts on him to calm him down because she "didn't want to get hit anymore." R. 105-1, Pg. ID 2285.

And if this evidence was not enough, Monasky testified about one incident when she believed Taglieri made a "death threat" against her. R. 105-1, Pg. ID 2305–06. After an argument, Taglieri "had the nastiest look on his face," and he "raised his fist as if he was going to hit" Monasky but then stormed into another room instead. R. 105-1, Pg. ID 2306. Monasky claimed that she heard him repeatedly muttering, "I can't do this anymore. I have to end this right now." R. 105-1, Pg. ID 2306–07. She interpreted his statements as "a death threat" and thought that he was going to get a knife. R. 105-1, Pg. ID 2306–07. Taglieri claims that this incident does not establish he *intended* to put her in fear of harm because he was only getting a spoon; any fear was unreasonable because it came from Monasky's own "extrapolation." Appellant Br. 35. Yet a jury could have found that Monasky's fear was reasonable based on the abusive history that she had detailed; in fact, she could have reasonably felt afraid when Taglieri simply raised his fist. That act alone provided sufficient grounds for finding assault. *See Stokes v. Meimaris*, 675 N.E.2d 1289, 1296 (Ohio Ct. App. 1996). The other evidence of physical acts and accompanying fear only solidify this conclusion.

## C.

Finally, Taglieri claims that the jury's $100,000 damages award was based on "passion and prejudice" rather than actual evidence. The district court declined to reduce the award. In Ohio, appellate courts review compensatory awards de novo. Ohio Rev. Code Ann. § 2315.19(C); *see Jones v. Wittenberg Univ.*, 534 F.2d 1203, 1212–13 (6th Cir. 1976) (suggesting that this circuit

follows state law standards of review when evaluating damages award). Yet this court traditionally reviews jury awards for an abuse of discretion. *See Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 397 (6th Cir. 1993). We need not decide which standard applies because Taglieri loses under either one.

District courts should not reduce damage awards unless the amount "clearly exceeds . . . the maximum that a jury could reasonably find to be compensatory." *Pendleton v. Over the Top, LLC*, 261 F. App'x 869, 871 (6th Cir. 2008) (quoting *Roush*, 10 F.3d at 397). In Ohio, a jury can award as much as $250,000 in compensation for noneconomic injuries. Ohio Rev. Code Ann § 2315.18(B)(2). The jury gave Monasky an award below that amount: $75,000 in compensatory damages and $25,000 in punitive damages. And plenty of evidence supports the jury's award. Monasky testified that Taglieri abused her often—smacking her, slapping her, punching her, and making her perform sexual acts. The abuse was so bad that Monasky had to see a psychologist. Taglieri mistakenly claims that this evidence relates to intentional infliction of emotional distress—something that Monasky did not plead. But Monasky did not need to plead intentional infliction of emotional distress to rely on damages from mental harms. *See Kassay v. Niederst Mgmt., Ltd.*, 113 N.E.3d 1038, 1047 (Ohio Ct. App. 2018). Under Ohio law, both assault and battery can result in mental pain that a jury can decide to compensate. Ohio Rev. Code Ann. § 2315.18(A)(4); *see also Phillips v. Miller*, No. 88AP-147, 1988 WL 137164, at *4 (Ohio Ct. App. Dec. 22, 1988) (defining mental anguish as "the mental suffering resulting from the excitation of the more poignant and painful emotions" (quoting Black's Law Dictionary (5th ed. 1979))). Since Monasky demonstrated that the mental pain she suffered stemmed from Taglieri's assault and battery, the jury had sufficient evidence to return the damages award.

Taglieri also states that we should vacate the $25,000 in punitive damages that the jury awarded Monasky. But he provides no separate explanation about why the jury erred in awarding this amount, so we decline to consider his argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal quotation marks and alteration omitted)).

IV.

Next, we consider de novo whether the district court erred in granting Monasky summary judgment on Taglieri's conversion claim. *Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994). Conversion exists when someone inappropriately excludes a property owner from his property. *State ex rel. Toma v. Corrigan*, 752 N.E.2d 281, 285 (Ohio 2001). Taglieri contends that when Monasky shut off his access to their bank account, she inappropriately converted the money he had contributed to that account.

To prove conversion, Taglieri had to identify "specific money" with which Monasky interfered. *Smith v. Boston Mut. Life Ins. Co.*, No. C–120668, 2013 WL 3148719, at \*3 (Ohio Ct. App. June 19, 2013) ("A claim for conversion will lie only when the money at issue is earmarked or is capable of identification, e.g., money in a bag . . . or funds that have been otherwise sequestered . . . ." (internal quotation marks and alteration omitted)); *see also Tinter v. Lucik*, 876 N.E.2d 1026, 1033 (Ohio Ct. App. 2007). Taglieri claims that he specifically identified money that he contributed to the account. But he faces one problem. As soon as he transferred that money into their shared account, it commingled with other funds: Monasky's life savings and various paychecks she had earned over the years. So "his" money commingled with "hers" in the account and became "theirs." Thus, whatever money Taglieri transferred into the account "lost its specific

identity" under Ohio law—dooming his conversion claim. *Betskoff v. Bank of Am. Nat'l Ass'n*, 538 F. App'x 308, 309 (4th Cir. 2013) (per curiam) (internal alteration omitted) (holding that a conversion claim failed when funds became commingled in an account); *accord Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007).

We affirm.