OPINION
{¶ 1} Defendants-appellants/cross-appellees, James Fletcher ("James"), Patrick Fletcher ("Patrick"), and Wingers, Inc.[1] appeal the judgment of the Shelby County Court of Common Pleas, granting partial summary judgment in favor of the plaintiff-appellee/cross-appellant, John Thomas ("Thomas"). In his cross-appeal, Thomas appeals the trial court's judgment denying his motion to strike James and Patrick's affidavits, and the denial of his motion for disqualification of counsel. We affirm the judgment of the trial court for the reasons that follow.
 {¶ 2} Thomas, James, and Patrick were the three shareholders of Wingers, Inc., an Ohio close corporation that operated a restaurant/bar in Sidney, Ohio.[2] The ownership and officers of the corporation consisted of the following: Thomas owned forty percent of the shares and was the corporation's president; James owned thirty-five percent of the shares and was the corporation's vice president; and Patrick owned twenty-five percent of the shares and was the corporation's secretary. All three shareholders participated equally in the management of the business, and were paid a salary based on the businesses performance.
 {¶ 3} Wingers was located on property that was initially subleased from a non-party named Noble Romans. Sometime in 1996, Noble Romans decided that it would not renew the sublease. At that time, Wingers had an option to purchase the property. Thomas approached the Fletchers about purchasing the property; however, the Fletchers chose not to be involved in any such purchase.
 {¶ 4} On December 2, 1996, Thomas established Thomas/Lowery, Ltd. ("Thomas/Lowery"), an Ohio limited-liability company in order to purchase the property where Wingers was located.[3] Wingers and Thomas/Lowery entered into a lease agreement on January 8, 1997. Under the lease agreement, Thomas/Lowery rented the property for $3,520 per month for a period of five years. In 2002, the lease was renewed for an additional five years with rent at $3,650 per month, an increase of one hundred and thirty dollars per month. The renewed lease was set to expire in January 2007.
 {¶ 5} During 2002 and 2003, Wingers and Thomas/Lowery attempted to negotiate another renewal of the lease agreement. However, the parties were unable to reach an agreement. James and Patrick terminated Thomas's employment at Wingers on October 21, 2003. Thomas subsequently filed a complaint against the appellants challenging his termination. The appellants then filed a counterclaim.
 {¶ 6} Thereafter, Thomas filed a motion to disqualify the appellants' counsel, Attorney Richard Rogers, arguing that a conflict of interest existed and there was an appearance of impropriety with Attorney Rogers representing both Wingers and the Fletchers. The trial court overruled the motion. Thomas then filed a motion for reconsideration which the trial court also overruled.
 {¶ 7} Thomas filed a motion for partial summary judgment on March 10, 2005. The trial court granted the motion and awarded Thomas partial summary judgment on the issue of liability on his claims against the appellants. The trial court also granted Thomas' partial summary judgment on the issue of liability on the appellants' counterclaims. The appellants filed a motion for reconsideration citing the fact that they had legitimate business reasons for terminating Thomas. The trial court denied the motion.
 {¶ 8} On October 12 and 13, 2005, the trial court held a jury trial on the issue of damages. The jury awarded Thomas $82,621.96 plus attorney's fees.
 {¶ 9} It is from the trial court's grant of partial summary judgment and denial of the motion for reconsideration that James, Patrick, and Wingers, Inc.appeal and set forth two assignments of error for our review. Thomas asserts two assignments of error on cross-appeal.
 APPELLANTS' ASSIGNMENT OF ERROR NO. I THIS COURT SHOULD REVERSE THE TRIAL COURT'S ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF BECAUSE DEFENDANTS HAD LEGITIMATE BUSINESS REASONS FOR TERMINATING PLAINTIFF AND PLAINTIFF'S CONDUCT CONSTITUTED A BREACH OF HIS FIDUCIARY DUTIES, DUTY OF LOYALTY AND DUTY OF FAIR DEALING.
 {¶ 10} In their first assignment of error, the appellants argue that the trial court erred in granting Thomas partial summary judgment on his claims against the appellants for breach of fiduciary duty, and duty of loyalty and fair dealing because genuine issues of material fact exist. Further, the appellants maintain the trial court erred in granting partial summary judgment on Thomas's claims of wrongful termination against Wingers. The appellants also assert, in this assignment of error, that the trial court erred in dismissing the appellants' counterclaims against Thomas because genuine issues of material fact exist regarding whether Thomas breached his fiduciary duties to the corporation and the other shareholders in the corporation when he failed to negotiate the lease renewal in good faith.
 {¶ 11} An appellate court reviews the trial court's grant of summary judgment under a de novo standard of review. Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243, citing Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. A moving party may prevail on a motion for summary judgment only if there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ. R. 56(C);Grafton, 77 Ohio St.3d at 105, citing State ex. rel. Cassels v. DaytonCity School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 219,631 N.E.2d 150.
 {¶ 12} The party moving for summary judgment has the initial burden of informing the trial court of the basis for the motion. Dresher v.Burt (1996), 75 Ohio St. 3d 280, 293, 662 N.E.2d 264. If the moving party fails to meet this burden then that party's motion for summary judgment must be denied. Id. If, however, the moving party satisfies the initial burden then the nonmoving party must establish sufficient facts to show that a genuine issue of material fact exists. Id.
 {¶ 13} The elements for a breach of fiduciary duty claim are: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom."Werthman v. Donet, 2d Dist. No. 20814, 2005-Ohio-3185, at ¶ 42, citations omitted.
 {¶ 14} Majority shareholders in a close corporation owe minority shareholders a heightened fiduciary duty. Crosby v. Beam (1989),47 Ohio St.3d 105, 548 N.E.2d 217, paragraph two of the syllabus. Majority shareholders in a close corporation breach their fiduciary duty to minority shareholders when they use their control of the corporation to obtain benefits that are not shared by the minority shareholders. Id. at 109, citing Alaska Plastics, Inc. v. Coppock (Alaska 1980),621 P.2d 270.
 {¶ 15} "Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent any legitimate business purpose, is actionable." Id. Majority shareholders cannot terminate a minority shareholder employee without a legitimate business purpose. Duggan v. Orthopaedic, 365 F.Supp.2d 853, 863, citations omitted.
 {¶ 16} In the case sub judice, Wingers was a close corporation with three shareholders. Patrick and James combined shares constituted a sixty percent interest in the corporation. Accordingly, the Fletchers were the majority shareholders in a close corporation and owed Thomas a heightened fiduciary duty.
 {¶ 17} Thomas, James, and Patrick participated equally as managers in Wingers with each working an equal number of shifts at the restaurant and each receiving an equal compensation based on Wingers' performance. When the Fletchers terminated Thomas's employment with Wingers, however, Thomas no longer received compensation. Consequently, absent a legitimate business purpose for the termination, the Fletchers breached their fiduciary duty.
 {¶ 18} The Fletchers maintain they had a legitimate business purpose for terminating Thomas's employment. The Fletchers claim that Thomas was unproductive, did not work well with others, was disruptive by threatening to sue, and his attitude and conduct was abrasive, condescending, abrupt, and intolerable.[4]
 {¶ 19} The Fletchers' affidavits state in pertinent part:
 5. Affiant states that John R. Thomas was terminated as an employee of Wingers, Inc. because he was unproductive, did not work well with other employees, and was disruptive by threatening to sue affiant.
 6. Affiant states that he tried to work with John R. Thomas regarding Wingers, Inc. business, but his (John R. Thomas') conduct and attitude (towards him) was abrasive, condescending, abrupt, and intolerable.
 {¶ 20} Neither party disputes that the Fletchers and Thomas had their disagreements throughout the years. In fact, at some point starting in 2000, the Fletchers and Thomas created an arrangement where they would leave their shift at Wingers before the next individual arrived in order to avoid seeing each other.
 {¶ 21} In his deposition, however, James acknowledged that the business continued to run during those years and that business was getting done. Patrick's deposition testimony similarly stated that the business seemed to work fine prior to Thomas's termination.
 {¶ 22} The appellants have not presented any facts to show that Thomas's conduct and attitude actually disrupted the running of the business. Both James and Patrick acknowledged in their respective deposition testimonies that the business was functioning prior to the termination of Thomas's employment. Thus, the appellants have failed to establish that Thomas's conduct and attitude created a legitimate business purpose for terminating Thomas's employment.
 {¶ 23} The appellants' remaining arguments, in this assignment of error, involve the lease renewal negotiations for the property where Wingers is located. The property, as previously noted, is owned by Thomas/Lowery, a corporation owned by Thomas.
 {¶ 24} The appellants maintain they had a legitimate business purpose for terminating Thomas's employment because Thomas failed to negotiate the lease renewal in good faith. The appellants assert that Wingers was experiencing financial hardship in 2003, and, at that time, Thomas initially threatened not to renew the lease, and then proposed a lease renewal with an unreasonable increase in the rate.
 {¶ 25} In their deposition testimonies, the Fletchers both admitted that they terminated Thomas's employment because of the proposed lease renewal terms. James stated, "I don't believe that the word fire ever came up until after he refused the negotiations and pretty much told us we were going to be — he was going to sink our ship as of January the 7th of '07." Further, the following took place during James' deposition:
 Q. And that termination was in response to this office — * * * [lease offer] of October 21 of 2003 that you believe to be totally unacceptable?
 A. Unreasonable and unacceptable, yes.
 {¶ 26} Patrick's deposition also indicated that Thomas's employment was terminated due to the failure of the lease negotiations. Patrick stated:
 A. We each ran our business the way we each ran our business and stayed out of each other's business. It seemed to work fine. Q. Okay. And had you gone forward and renegotiated the lease in 2002 and gone forward, is it your understanding that you would have gone forward on the same basis? A. Yes. * * * * * * And the reason for that termination was the failure of these negotiations? A. Partially. Q. Anything else? A. Just the conflicting interest in the problems that we were having. Q. But up to this point you had not seen any reason to make any efforts to terminate [Thomas]. This was the reason you terminated? A. No. That is not the only reason. Q. Okay. What are the other reasons? A. What I just repeated. That we were having problems. There was a lot of conflicting interests * * *. We had a partner who had become a landlord who became a competitor and we just got to where we couldn't reason with one another. Nothing more than a business divorce.
 {¶ 27} The record reveals that although Thomas initially did not want to renew the lease, he did in fact decide to negotiate the renewal of the lease, and the parties subsequently engaged in lease negotiations. Thomas stated in his affidavit and his deposition testimony that he consulted with various third parties regarding the rates for commercial businesses.
 {¶ 28} The appellants claim that Thomas's affidavit and deposition failed to present admissible evidence that the proposed lease renewal terms were commercially reasonable. However, the key issue is not whether Thomas's proposed lease offer was in fact commercially reasonable, but rather, whether Thomas's negotiations over the lease renewal lacked good faith. Since Thomas presented evidence that he acted in good faith, the burden then shifted to the appellants to present evidence that Thomas failed to act in good faith such as would present a genuine issue of material fact over the matter.
 {¶ 29} Thomas and the Fletchers negotiated the lease renewal in 2002 and 2003. At the time the Fletchers terminated Thomas, the lease still had more than three years before it was set to expire. Although the lease renewal negotiations occurred at a time when Wingers was struggling financially, the mere fact that Thomas proposed a rent increase does not necessarily mean he acted in bad faith. The lease renewal would not be effective until January 2007, and there is no indication in the record whether Wingers would still be struggling financially when the rent increase would be scheduled to begin.
 {¶ 30} The record reveals that Thomas talked with third parties about commercial rates. The appellants, however, did not talk to any realtors or brokers about the fair market value of the property nor did the appellants have the building appraised. The appellants have failed to point to any evidence in the record indicating that Thomas failed to act in good faith in negotiating the lease renewal. As a result, there are no facts showing that the Fletchers, the majority shareholders in Wingers, had a legitimate business purpose for terminating Thomas's employment. Correspondingly, there are no facts demonstrating that Wingers had a legitimate business reason to terminate Thomas's employment. Assuming, arguendo, that Thomas had a fiduciary duty to the corporation as a minority shareholder, no facts exist demonstrating that Thomas breached any fiduciary duties.
 {¶ 31} After reviewing the record, we hold that no genuine issues of material fact exist in Thomas's breach of fiduciary duty, duty of loyalty and fair dealing claim; in Thomas's wrongful termination claim against Wingers; and in appellants' counterclaims against Thomas. Accordingly, we find that the trial court properly granted Thomas's motion for partial summary judgment. The appellants' first assignment of error is, therefore, overruled.
 APPELLANTS' ASSIGNMENT OF ERROR NO. II THIS COURT SHOULD REVERSE THE TRIAL COURT'S ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION.
 {¶ 32} The appellants, in their second assignment of error, assert that the trial court erred when it denied their motion for reconsideration. Specifically, the appellants maintain that their motion for reconsideration contained additional information demonstrating that genuine issues of material fact exist, thus, precluding the grant of partial summary judgment. The additional information includes Thomas's deposition testimony that the Fletchers and Thomas had experienced personal conflicts when operating the business, that Thomas wanted to be president of the corporation and wanted one or both of the Fletchers to leave, that Thomas tried to place additional people on the board of directors, that Thomas consulted his attorney on ways to regain control of the corporation, and that Thomas considered not renewing the lease agreement.
 {¶ 33} A trial court's grant of summary judgment on the issue of liability alone is an interlocutory order. Summit Petroleum, Inc. v.K.S.T. Oil Gas Company Inc. (1990), 69 Ohio App.3d 468, 470,590 N.E.2d 1337, citing Davis v. Finch (1961), 115 Ohio App. 104,20 O.O.2d 216, 184 N.E.2d 596. Pursuant to Civil Rule 54(B), a trial court's order or decision is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Accordingly, an interlocutory order is "subject to motions for reconsideration." Pitts v. Ohio Dept. of Trans. (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, ft. one.
 {¶ 34} An appellate court reviews a trial court's decision regarding a motion to reconsider the trial court's previous interlocutory order under an abuse of discretion. Savage v. Kucharski, 11th Dist. No. 2005-L-141, 2006-Ohio-5165, at ¶ 37, citing Vanest v. Pillsbury Co.
(1997), 124 Ohio App.3d 525, 535. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 35} While the parties had some disagreements regarding the corporation, the Fletchers and Thomas continued to operate the business and the business continued to function. Moreover, the fact that Thomas wishes to increase his control in the company and had consultations with an attorney in that regard did not add anything to the appellants' argument. As a shareholder in the corporation, Thomas could attempt to maximize his influence within the corporation as long as he did so lawfully.
 {¶ 36} Thus, the additional evidence, listed in the motion for reconsideration, does not establish the existence of a genuine issue of material fact. The trial court did not abuse its discretion in denying the appellants' motion for reconsideration of the trial court's grant of partial summary judgment.
 {¶ 37} Appellants' second assignment of error is, therefore, overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN NOT STRIKING THE AFFIDAVITS OF JAMES FLETCHER AND PATRICK FLETCHER.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR NO. II THE TRIAL COURT ERRED IN DENYING CROSS-APPELLANT'S MOTION TO DISQUALIFY DEFENDANTS' COUNSEL OF RECORD AND MOTION FOR RECONSIDERATION OF DISQUALIFICATION OF COUNSEL.
 {¶ 38} Thomas's cross-appeal has been rendered moot by this court's disposition of the appellants' assignments of error.
 {¶ 39} Having found no error prejudicial to appellant or cross-appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 BRYANT, P.J., and SHAW, J., concur.
[1] James, Patrick, and Wingers, Inc. will be collectively referred to in this opinion as the "appellants".
[2] James and Patrick Fletcher are brothers.
[3] At the time it was established, Thomas and an individual named Greg Lowery were members of the company. However, Lowery is no longer a member of Thomas/Lowery, Ltd.
[4] Thomas, in his cross-appeal, argues that the trial court should have struck the Fletchers' affidavits as the affidavits were conclusory and not supported by specific facts. Since this court finds the trial court properly granted Thomas's motion for summary judgment, we need not reach Thomas's arguments regarding the Fletchers' affidavits.