[Cite as *Boyer v. Seislove*, 2026-Ohio-2244.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

MARY ELIZABETH BOYER,

    PLAINTIFF-APPELLANT,

  v.

RONALD D. SEISLOVE, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 13-25-14

OPINION AND
JUDGMENT ENTRY

---

Appeal from Seneca County Common Pleas Court
Trial Court No. 23-CV-0048

Judgment Affirmed

Date of Decision: June 15, 2026

---

APPEARANCES:

    *Jeffrey M. Stopar* for Appellant

    *Paul F. Burtis* for Appellees

**MILLER, J.**

{¶1} Plaintiff-appellant, Mary Elizabeth Boyer ("Boyer"), appeals the May 30, 2025 judgment of the Seneca County Court of Common Pleas granting summary judgment to the defendants-appellees, Ronald D. Seislove, Marilyn A. Seislove, Paul David Seislove, Anne E. Price, Seislove Burial Vault Service, Inc., Six Love, LLC, and RDS65, LLC (collectively, "the defendants").

*Procedural History and Factual Background*

{¶2} This case originated on February 22, 2023, when Boyer filed a complaint against the defendants in the trial court, seeking monetary damages and injunctive relief.

{¶3} At issue in the complaint was the ownership and management of Seislove Burial Vault Service, Inc., a company owned and run by Boyer's family for many decades. Originally, the company cast concrete burial vaults, which are then placed in the ground to hold coffins. Over the years, the business also began casting and placing concrete septic tanks.

{¶4} Boyer's father, Ralph Seislove, started the company as a sole proprietorship in the 1940s. In 1991, Ralph established the Ralph P. Seislove Trust, and the assets of the company were transferred to the trust to benefit Ralph and his wife, Dolores Seislove. Upon the deaths of Ralph and Dolores, the trust assets were

to be distributed equally to their three living adult children: Boyer, Rita Scherger, and Paul David ("David") Seislove.

{¶5} Following Ralph's death in January of 2003, at which time Dolores was still living, the three adult children became the co-trustees of the trust. In late 2003, the three co-trustees incorporated the business and formed Seislove Burial Vault Service, Inc. Following the death of Dolores in April of 2017, Boyer, her sister, Rita, and her brother, David, became equal co-owners of the corporation, with each of them then owning 167 shares, or one-third, of the 501 total shares of stock in the company.

{¶6} At some point after the shares of stock had been distributed, Ronald Seislove, who had worked at the company for many years, discussed with his father, David, the idea of his purchasing everyone's shares of stock in the company. David had no objection to this idea. In April or May of 2018, Ronald approached Rita to inquire as to her interest in selling her 167 shares of the company to him. About this same time, he conveyed a message to Boyer through her attorney, to see if she would also be interested in selling her shares of stock. Both of Ronald's aunts expressed a willingness to sell him their shares of stock. In order to facilitate Ronald's purchase of the stocks, a restriction on stock transfers in the Code of Regulations governing the company would have to be amended by a two-thirds vote of the shareholders to allow the stock sales without triggering a right of first refusal. David and Rita agreed to the amendment. Following the amendment, David gifted

his 167 shares of stock to Ronald in August of 2018, and then Ronald purchased Rita's 167 shares in October of 2018. Boyer decided to not sell her shares.

{¶7} The complaint filed by Boyer in this case alleged that those transfers of stock ownership to Ronald were done without her knowledge and consent, thereby depriving Boyer of her right and option to purchase a controlling interest in the company. The complaint alleged that the stock transfers occurred after the Code of Regulations was amended without Boyer's knowledge and consent. The complaint further alleged that Ronald's sister, Anne Seislove, had acted as an officer of the company without proper corporate authority and that Boyer had been removed by the defendants from the company's board of directors in 2019, thereby excluding her from the internal decision-making process and management of the company. Boyer's complaint additionally alleged that the defendants had diverted large sums of money from the company to RDS65, LLC, a limited liability company organized by Ronald in 2010, which the complaint asserted was an effort to deplete the assets of Seislove Burial Vault Service, Inc. and to diminish the value of Boyer's stock in Seislove Burial Vault Service, Inc. Finally, the complaint alleged that David Seislove, in his capacity as President and CEO of the company, had without board approval stopped making rent payments from the company to the owners, including Boyer, of the real property upon which the company does its business, thereby depriving Boyer of her share of the fair rental income of that property.

{¶8} Based upon those allegations, Boyer's complaint set forth five causes of action: (1) breach of fiduciary duty regarding the real property, (2) breach of fiduciary duty regarding the company, (3) usurpation of corporate opportunities, (4) civil conspiracy, and (5) injunctive relief.

{¶9} On April 25, 2023, the defendants filed an answer to the complaint. In that answer, the defendants admitted most of the background facts set forth in the complaint relating to the formation of the company at issue, the subsequent incorporation of the company, and the changes in ownership of the company over time. The answer denied the allegations of wrongdoing, and set forth a number of affirmative defenses to the causes of action raised in the complaint.

{¶10} On May 30, 2024, the defendants filed a motion to dismiss the first cause of action in the complaint and a portion of the fourth cause of action, pursuant to Civ.R. 12(B)(6).

{¶11} On September 4, 2024, the defendants filed a motion for summary judgment pursuant to Civ.R. 56, requesting that the trial court grant summary judgment in the defendants' favor on all of Boyer's claims for relief. Attached to the motion for summary judgment, and submitted in support thereof, were the affidavits of Ronald Seislove, David Seislove, and David J. Claus, an attorney who served as corporate counsel for the company beginning in March of 2019, as well as a number of documents relating to the ownership and operation of Seislove Burial Vault Service, Inc.

{¶12} On October 16, 2024, Boyer filed a memorandum in opposition to the defendants' motion for summary judgment. Attached to the memorandum in opposition to summary judgment, and submitted in support thereof, was the affidavit of Boyer.

{¶13} On October 30, 2024, the defendants filed a reply to Boyer's memorandum in opposition to the defendants' motion for summary judgment. On that same date, the defendants also filed an objection to, and motion to strike, portions of Boyer's affidavit.

{¶14} On November 14, 2024, Boyer filed another memorandum in opposition to the motion for summary judgment and in opposition to the motion to strike.

{¶15} On May 30, 2025, the trial court filed a judgment entry, including a lengthy and detailed opinion, in which the trial court denied the defendants' motion to dismiss and motion to strike, but granted the defendants' motion for summary judgment as to all causes of action raised in the complaint.

{¶16} On June 26, 2025, Boyer filed the instant appeal, in which she raises one assignment of error.

**Assignment of Error**

**The trial court erred in granting Defendants' motion for summary judgment. (May 30, 2025 Judgment Entry.)**

{¶17} In the sole assignment of error, Boyer asserts that the trial court erred in granting summary judgment in favor of the defendants on the five causes of action raised in Boyer's complaint.

{¶18} Civ.R. 56(B) provides, in relevant part:

A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action.

{¶19} Civ.R. 56(C) provides, in relevant part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶20} "Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the

nonmoving party." *Tharp v. Whirlpool Corp.*, 2018-Ohio-1344, ¶ 24 (3d Dist.), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

**{¶21}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Ineos USA L.L.C. v. Furmanite Am., Inc.*, 2014-Ohio-4996, ¶ 18 (3d Dist.), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.* "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; the nonmoving party may not rest on the mere allegations or denials of the pleadings." *Id.*, citing *Dresher* at 293; Civ.R. 56(E).

**{¶22}** "Material facts" are facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, citing *Anderson* at 251-252.

**{¶23}** Appellate courts conduct a de novo review of a trial court's decision on a motion for summary judgment. *Hancock Fed. Credit Union v. Coppus*, 2015-Ohio-5312, ¶ 15 (3d Dist.), citing *Esber Beverage Co. v. Labatt United States Operating Co., L.L.C.,* 2013-Ohio-4544, ¶ 9. Thus, this Court must conduct an

independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp*, 2018-Ohio-1344, at ¶ 23.

**{¶24}** In the instant case, as previously noted, the complaint filed by Boyer on February 22, 2023 set forth five causes of action: (1) breach of fiduciary duty regarding the real property, (2) breach of fiduciary duty regarding the company, (3) usurpation of corporate opportunities, (4) civil conspiracy, and (5) injunctive relief. We shall address each of those in turn.

*First Cause of Action – Breach of Fiduciary Duty (Real Property)*

**{¶25}** The first cause of action set forth in Boyer's complaint alleged a breach of fiduciary duty with respect to the real property upon which Seislove Burial Vault Service, Inc. conducts its business operations. In support of the claim regarding the real property, Boyer's complaint alleged that David Seislove, in his capacity as President and CEO of the burial vault company, had without board approval stopped making rent payments from the company to the owners, including Boyer, of the real property at issue, thereby depriving Boyer of her share of the fair rental income of that property. Boyer's affidavit attested that the property on which the company conducts business had been owned by her mother, Dolores, for decades and that, pursuant to a long-standing oral triple net lease, the company paid Dolores rent in the amount of $1,000.00 per week. Boyer averred in her affidavit that, upon her mother's death, Boyer and her two siblings each became one-third owners of

the real property and that first David, and then Ronald, as President of the company, had refused to pay rent as required by the oral lease.

{¶26} The elements for a breach-of-fiduciary-duty claim are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury proximately resulting. *Hickerson v. Hickerson,* 2010-Ohio-4070, ¶ 24 (3d Dist.).

{¶27} "'A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking.'" *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 2008-Ohio-1490, ¶ 19 (3d Dist.), quoting *All Star Land Title Agency, Inc. v. Surewin Invest., Inc*., 2006-Ohio-5729, ¶ 36 (8th Dist.). "'A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care.'" *Id*. "'In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom.'" *Id*., quoting *All Star Land Title Agency* at ¶ 36.

{¶28} In the instant case, notwithstanding the breach of a lease agreement stated in the background facts contained in the complaint and supported by the averments in Boyer's affidavit, we find that summary judgment was properly granted as to the first cause of action. Importantly, Boyer did not allege a specific cause of action claiming a breach of the oral lease. Consequently, our analysis is

limited to the claimed breach of fiduciary duty. Neither the complaint nor any of the evidentiary documentation filed with regard to the motion for summary judgment alleged any facts tending to establish that a fiduciary relationship existed between Boyer and any of the defendants with respect to Boyer's part-interest in the ownership of the real property. Accordingly, we overrule Boyer's assignment of error with respect to the first cause of action in her complaint.

*Second Cause of Action – Breach of Fiduciary Duty* (*Corporation*)

1. *Amendment of Code of Regulations*

{¶29} As noted above, the elements for a breach-of-fiduciary-duty claim are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury proximately resulting. *Hickerson* 2010-Ohio-4070, at ¶ 24.

{¶30} It is undisputed in this case that Seislove Burial Vault Service, Inc. is a close corporation, which is defined as "an entity with 'few shareholders and whose corporate shares are not generally traded on a securities market.'" *Id.* at ¶ 25, quoting *Tinter v. Lucik,* 2007-Ohio-4437, ¶ 23 (8th Dist.). "'[O]wnership of close corporations is "limited to a small number of people who are dependent on each other for the enterprise to succeed."'" *Id*., quoting *Wheeler v. Johnson,* 2008-Ohio-2599, ¶ 24 (2d Dist.), quoting *Tinter* at ¶ 23. "Essentially, shareholders in a close corporation owe each other a fiduciary duty to deal in utmost good faith." *Id*., citing *Herbert v. Porter,* 2006-Ohio-355, ¶ 12 (3d Dist.).

{¶31} In *Thomas v. Fletcher*, 2006-Ohio-6685 (3d Dist.), this Court elaborated upon the fiduciary duty that arises among shareholders in a close corporation:

> Majority shareholders in a close corporation owe minority shareholders a heightened fiduciary duty. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217, paragraph two of the syllabus. Majority shareholders in a close corporation breach their fiduciary duty to minority shareholders when they use their control of the corporation to obtain benefits that are not shared by the minority shareholders. *Id.* at 109, citing *Alaska Plastics, Inc. v. Coppock* (Alaska 1980), 621 P.2d 270.
>
> "Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent any legitimate business purpose, is actionable." *Id.* Majority shareholders cannot terminate a minority shareholder employee without a legitimate business purpose. *Duggan v. Orthopaedic,* 365 F.Supp.2d 853, 863, citations omitted.

*Id*. at ¶ 14-15.

{¶32} The reason for that heightened fiduciary duty was explained by the Supreme Court of Ohio in *Crosby v. Beam*, 47 Ohio St. 3d 105 (1989), as follows:

> While a close corporation provides the same benefits as do other corporations, such as limited liability and perpetuity, the close corporation structure also gives majority or controlling shareholders opportunities to oppress minority shareholders. For example, the majority or controlling shareholders may refuse to declare dividends, may grant majority shareholders-officers exorbitant salaries and bonuses, or pay high rent for property leased from the majority shareholders. *Donahue v. Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 588–589, 328 N.E.2d 505, 513.

> Minority shareholders in a close corporation, denied any share of the profits by the majority shareholder's action, will either suffer a loss or try to find a buyer for their stock. This situation is contrasted with an oppressed minority shareholder in a large publicly owned corporation who can more easily sell his shares in such a corporation. Generally, there is no ready or available market for the stock of a minority shareholder in a close corporation. This presents a plight for a minority shareholder in a close corporation who can become trapped in a disadvantageous situation from which he cannot be easily extricated. *Donahue, supra,* 367 Mass. at 591–592, 328 N.E.2d at 515.

*Id*. at 108.

**{¶33}** Finally, in a closely held corporation, a majority shareholder "'has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests.'" *Franks v. Rankin,* 2012-Ohio-1920, ¶ 34 (10th Dist.), quoting *Crosby* at 108-109.

**{¶34}** The second cause of action of Boyer's complaint asserted a breach of fiduciary duty with respect to the operation and management of Seislove Burial Vault Service, Inc. At all times relevant to that claim, the company was a close corporation with three, and then two, shareholders. Before any of the shares of stock were transferred to Ronald Seislove, the combined shares owned by David Seislove and Rita Scherger constituted a two-thirds interest in the corporation. Accordingly, David and Rita together were majority shareholders in a close corporation and owed Boyer a heightened fiduciary duty. Once Ronald acquired a majority of the shares in the company, he then alone owed Boyer a heightened fiduciary duty in her capacity as a minority shareholder.

-13-

{¶35} With respect to the alleged breach of fiduciary duty regarding the corporation, Boyer's complaint alleges that the transfer of majority ownership of the company to Ronald was done without her knowledge and consent, to her detriment.

{¶36} As noted above, in order to facilitate Ronald's purchase of Rita's stock in 2018, a restriction on stock transfers in the company's Code of Regulations was amended by a two-thirds vote of the shareholders, the persons voting in favor of the amendment being David and Rita. Following that, David gifted his 167 shares of stock to Ronald in August of 2018, and then Ronald purchased Rita's 167 shares in October of 2018. As David and Ronald acknowledge in their affidavits filed in support of summary judgment, the amendment of the Code of Regulations permitted a shareholder to sell shares to another shareholder or another shareholder's children, without triggering the rights of first refusal held by other shareholders—such as Boyer—pursuant to the original Code of Regulations.

{¶37} The trial court in its judgment entry concluded, in essence, that Boyer's breach of fiduciary duty claim regarding the transfer of majority ownership to Ronald failed as a matter of law because the procedural requirements in the Code of Regulations for making amendments thereto were followed when the amendment was effectuated.

{¶38} The uncontested evidence relevant to summary judgment establishes that after the death of Dolores Seislove, the shares of Seislove Burial Vault Service,

Inc. were distributed equally among David, Rita and Boyer. Ronald's control of the Seislove corporation was acquired after he approached each of the company's shareholders inquiring about obtaining their stock. In April or May of 2018, Ronald approached Rita to inquire as to her interest in selling her shares of the company to him. About this same time, he conveyed a message to Boyer through her attorney, to see if she would be interested in selling her shares of stock. Both shareholders expressed a willingness to sell him their shares of stock. David was also willing to gift his shares to Ronald. Because the shareholders each expressed an interest in transferring their shares to Ronald, an amendment of the company's governing rules to permit the transfer of the stock was necessary to avoid triggering a right of first refusal. The corporate attorney, Paul Burtis, recommended an amendment that would permit the transfer of shares.

{¶39} Boyer's knowledge of Ronald's desire to purchase her and Rita's shares was evidenced in her affidavit where she admits she made efforts to obtain an appraisal of the business before she would consider selling either her stock or her interest in the land on which the company was located. Additionally, Boyer's knowledge of the intended sale is indicated in the affidavits of both Ronald and David as well as a letter from Paul Burtis to Boyer's attorney dated August 7, 2018. The letter specifically referenced a July 2, 2018 conversation between the attorneys regarding the possibility of Boyer selling her shares to Ronald. The letter also

indicated that David and Rita amended the Code of Regulations to allow for the sale.

**{¶40}** Further, Boyer's protestation that she was unaware of the amendment to the Code of Regulations is meritless because her attorney, acting as her agent, subsequently ratified the amendment of which she complains. It is noteworthy that, at the time the Code of Regulations was amended, the corporation had three equal shareholders—Boyer, David and Rita. Ronald was not yet a shareholder and, consequently, owed no fiduciary duty to Boyer. Further, Boyer has presented no evidence to show that David and Rita acted in concert in a manner that violated a duty to Boyer, who did not even name Rita as a defendant in this lawsuit. Finally, the fact Boyer was not aware of Rita's and then David's subsequent transfer of their shares of stock to Ronald is of no matter as there was no duty of notification.

**{¶41}** Accordingly, we find that no question of triable fact exists with regard to Boyer's breach of fiduciary duty claim relating to the amendment of the corporate regulations. We therefore hold that the trial court did not err in granting summary judgment as to this issue.

### 2. *Self-dealing to the Benefit of RDS65, LLC*

**{¶42}** With regard to the second cause of action, Boyer also alleged in her complaint that a company owned by Ronald, RDS65, LLC, has been used by Ronald for purposes of self-dealing and that Ronald has used his majority interest in Seislove Burial Vault Service, Inc. to facilitate the same, thereby breaching his

fiduciary duty owed to Boyer. In that respect, the record reflects that well prior to becoming a shareholder in Seislove Burial Vault Service, Inc., Ronald organized RDS65, LLC in order for that limited liability company to then purchase the assets of another company, the Baumgardner Company, that did septic tank work. It is undisputed that Seislove Burial Vault Service, Inc., in addition to casting and placing concrete burial vaults, had also been in the septic tank business for many years prior to Ronald organizing RDS65, LLC, and Ronald's limited liability company then purchasing the Baumgardner septic tank business.

{¶43} Specifically, the complaint alleged that large sums of money had been diverted from the Seislove corporation to RDS65, LLC, in an effort to deplete the assets of the Seislove company and diminish the value of Boyer's stock. Other than its identification as a party, there are only three paragraphs in Boyer's complaint relating to RDS65, LLC and the second cause of action, which state:

10. RDS 65, LLC (RDS) is an Ohio Limited Liability Company having its principal place of business located and commonly referred to [as] 2168 S. State Route 100, Tiffin, Ohio 44883.

24. Defendants diverted large sums of money from the Seislove Company to RDS65, LLC, an Ohio Limited Liability Company, in an effort to deplete the assets of Seislove Company, diminish the value of [Boyer's] common stock in the Seislove Company, all to the Defendants' benefit and the financial detriment of [Boyer].

32. As a direct and proximate result of the Defendants' controlling authority and self-interest business dealings within the Seislove Company, they have breached their fiduciary duties to [Boyer], and caused her to suffer in excess of $25,000.00.

{¶44} In Boyer's affidavit, she avers that the Seislove corporation pays all the expenses of RDS65, LLC. That affidavit also asserts that Ronald's salary increased significantly when the Baumgardner assets were acquired.

{¶45} With regard to the claims raised relating to RDS65, LLC, and the "Baumgardner business," the affidavit of Ronald Seislove avers in relevant part as follows:

> 9. In 2010 I was an employee of [Seislove Burial Vault Service, Inc., or "SBVS"]; I was not an officer or Director at the time. I learned of an opportunity to purchase the assets of Baumgardner Company ("Baumgardner"). Baumgardner, located in Tiffin, Ohio, was a retail and wholesale company offering masonry products, septic tanks, and certain building materials. I formed RDS65, LLC, an Ohio limited liability company ("RDS"), with the purpose of purchasing the assets of Baumgardner which was struggling. The assets included machinery, tools, equipment, computers, raw materials, as well as the customer list and name and phone number for Baumgardner.
>
> 10. At that time in 2010, in addition to its burial vault business, SBVS installed concrete septic tanks in Seneca County and a couple of surrounding counties. Because Baumgardner also installed septic tanks, it would be a good fit for SBVS. More importantly, though, Baumgardner offered a septic tank maintenance program, a program that SBVS did not offer. Through that maintenance program, customers received annual service work on their septic systems, and that maintenance program provided a steady source of income. However, Baumgardner also sold and installed fireplaces, which was a source of concern because of liability issues.
>
> 11. Using my own funds and through RDS, I purchased the assets of Baumgardner. That transaction closed on December 31, 2010.
>
> 12. I basically turned over to SBVS all of the proceeds from sales that the Baumgardner assets generated, even though those assets were purchased by me through RDS. My thinking was that my grandfather

Ralph had passed away, that my dad, David, was running the business but was getting older, and that I was the next most experienced employee. I was an employee receiving my pay but I was also a father and husband trying to provide for my family. I hoped that by providing a valuable business opportunity to SBVS, the Board would recognize my efforts and possibly give me a bonus or increase my pay.

* * *

13. From the outset, the Baumgardner assets which were purchased by RDS and the proceeds of that enterprise have all been a part of SBVS. SBVS includes all of that income from RDS on its corporate tax returns and its financial reports.

14. Through the years and up to the present, what was the old Baumgardner phone number has been kept and business arising from the Baumgardner [acquisition] has been separately accounted for even though all the proceeds belong to SBVS. * * *

15. My reasons for maintaining a separate identify [sic] for RDS, the Baumgardner successor, are as follows:

a. The fireplace work that we initially continued after Baumgardner assets were acquired as a source of liability. The thought was that that work should be kept in an entity separate and apart from SBVS, so we did that work through RDS.

b. Prior customers from Baumgardner had that old phone number. We informed customers that RDS had taken over the work and told them they could continue to call the old phone number to schedule maintenance work.

c. Accounting for that separate work allows management to track performance of the different parts of the business. For example, the septic maintenance work has been a steady stream of income, but we have watched the burial vault work decline over the years in large part due to increased cremations.

16. To those points and consistent with those business practices, RDS has its own bank accounts. Invoices are sent out on RDS invoices,

and customers pay their bills to RDS. All of that activity has in the past and continues currently to flow through RDS's accounts but it is all a part of SBVS, just like indicated in the 2012 Board meeting minutes. As far as the public is concerned, RDS is a separate entity. However, for all purposes for SBVS, its shareholders, its Board, its tax returns, and its financial statements, RDS finances are a part of SBVS and all amounts in RDS accounts belong to SBVS. If SBVS needed to replace an expensive piece of equipment or make expensive capital improvements, all of the RDS funds are available for SBVS to use.

17. Any RDS account is not a secret account. All such accounts have been discussed at SBVS meetings. No funds from any source other than the RDS-related work [have] been deposited into that RDS account. No SBVS funds have ever been moved to or deposited into an RDS account.

18. I have never [been] reimbursed or paid by SBVS for any portion of the purchase price that I paid to Baumgardner.

(Docket No. 45, Exhibit A, Affidavit of Ronald D. Seislove).

{¶46} Importantly, in 2010 when Ronald formed RDS65, LLC and acquired the assets from Baumgardner, he was not a shareholder of Seislove Burial Vault Service, Inc. Accordingly, any breach of a fiduciary duty could not have occurred until years later and Boyer provides no evidence of self-dealing by RDS65, LLC or Ronald now that he is the majority shareholder of the company.

{¶47} On the contrary, the evidence demonstrates Ronald informed the company's board in 2010 of his creation of RDS65, LLC and its acquisition of Baumgardner's assets. Further, Ronald turned over the profits from RDS65, LLC to the company explaining that he thought this would enhance the services provided by the company. The financial activity of the two companies is separate with each

business maintaining separate bank accounts and submitting separate income tax filings.

{¶48} Further, Boyer has failed to put forth any evidence demonstrating that she suffered any injury as required to establish a claim for a breach of fiduciary duty. *Hickerson v. Hickerson,* 2010-Ohio-4070, ¶ 24 (3d Dist.). In her affidavit, Boyer claims only that, "When Ron added the Baumgartner [sic] septic business assets, his salary increased significantly, while the profits distributed to Dolores did not change, which obviously harmed Dolores financially, as she was then the owner." She makes no claim of suffering an injury herself. In fact, the affidavits of both David and Ronald indicate Seislove Burial Vault Service, Inc. has never declared a dividend to be paid to the shareholders nor paid its officers or directors any stipend, fee or other remuneration. Consequently, even if there is a sharing of the assets between the two businesses, Boyer has suffered no loss.

{¶49} The assertions in Boyer's affidavit are insufficient to demonstrate the existence of issues of material fact sufficient to constitute a breach of a fiduciary duty by Ronald after he became the majority shareholder.

*Remaining Defendants and a Lack of Fidutiary Duty*

{¶50} Finally, with regard to the second cause of action as it relates to the remaining defendants, neither the complaint nor any of the evidentiary documentation filed with regard to the motion for summary judgment set forth any facts tending to establish that a fiduciary relationship existed between Boyer and

any of the defendants other than David and Ronald. Accordingly, the trial court appropriately granted summary judgment on the second cause of action in favor of the other five defendants, being Marilyn A. Seislove, Anne E. Price, Seislove Burial Vault Service, Inc., Six Love, LLC, and RDS65, LLC.

{¶51} Boyer's assignment of error with respect to the summary judgment granted on the second cause of action in her complaint is therefore overruled.

*Third Cause of Action – Usurpation of Corporate Opportunities*

{¶52} The third cause of action in Boyer's complaint set forth a claim of usurpation of corporate opportunities. With respect to this claim, the complaint alleged that on or about December 14, 2010, Ronald Seislove formed RDS65, LLC, a company that does work related to sewer and septic systems. The complaint further alleged that sales or other business opportunities that would have otherwise belonged to Seislove Burial Vault Service, Inc., which also does work related to septic systems, have been diverted to RDS65, LLC by utilizing the property, equipment and employees of the Seislove company to perform work for RDS65.

{¶53} "'A corporate officer has a fiduciary obligation to the corporation he serves. From this fiduciary obligation arises the doctrine of usurpation of a corporate opportunity.'" *Scala v. Scala*, 2023-Ohio-2232, ¶ 46 (9th Dist.), quoting *Miller Bros. Excavating, Inc. v. Stone Excavating, Inc.*, 1998 Ohio App. LEXIS, *5 (2d Dist. Jan. 16, 1998). "The usurpation of a corporate opportunity is established when the corporation shows that (1) the officer or director acquired information

about the opportunity while acting for the corporation; and (2) the opportunity is in the corporation's line of business." *Prodan v. Hemeyer*, 80 Ohio App.3d 735, 743-744 (8th Dist. 1992), citing *Hubbard v. Pape*, 2 Ohio App.2d 326 (1st Dist. 1964).

{¶54} Where evidence of the usurpation of a corporate opportunity is presented, "'the fiduciary bears the burden of establishing that an opportunity in the corporation's line of business is unavailable to it because of the wishes of the offeror.'" *Prodan* at 744, quoting *Michals Ent., Inc. v. Alexandrou*, 1984 WL 3617 (8th Dist. Nov. 21, 1984). "'The burden is shifted for two reasons. First, the fiduciary has been involved in the negotiations. He is in a better position vis-a-vis the corporation to show why the third party was unwilling to deal with the corporation. Secondly, the fiduciary is under a duty to the corporation to use his best efforts to secure the opportunity for the corporation. These efforts are required of him personally, and he must show them before he can compete with the corporation.'" *Id*., quoting *Michals Ent*., *Inc*.

{¶55} As with conflict-of-interest transactions and self-dealing, usurpation of corporate opportunities is a breach of fiduciary duty. *Meehan v. Mardis*, 2019-Ohio-4075, ¶ 9 (1st Dist.).

{¶56} With regard to this cause of action in the instant case, the general facts alleged by Boyer and acknowledged by Ronald may suggest the possibility of corporate opportunities having been usurped by Ronald or his business, RDS65, LLC. However, a review of the record reflects that Boyer failed to allege any facts,

much less set forth any preliminary evidence, relating to a specific corporate opportunity, or opportunities, that were usurped by Ronald or RDS65, LLC.

{¶57} Boyer's position on appeal disregards the requirement that she come forward with specific evidence, not just mere allegations, that her claim of usurpation of corporate opportunities was a genuine triable issue, in order to defeat the defendants' motion for summary judgment. *See Ineos USA L.L.C.*, 2014-Ohio-4996, at ¶ 18; Civ.R. 56(E).

{¶58} Thus, after reviewing the record, we hold that no genuine issues of material fact exist as to Boyer's usurpation of corporate opportunities claim. Accordingly, we find that the trial court properly granted summary judgment in favor of all defendants on that cause of action.

*Fourth Cause of Action – Civil Conspiracy*

{¶59} The fourth cause of action in Boyer's complaint set forth a claim of civil conspiracy. With respect to this claim, the complaint alleged that Ronald and other defendants, by virtue of their control of the real property upon which Seislove Burial Vault Service, Inc. does business, their control of Six Love LLC, their control of RDS 65, LLC, and their control of Seislove Burial Vault Service, Inc., had joined together, planned and conspired for the wrongful purpose of breaching their fiduciary duty to Boyer, to her detriment.

{¶60} "Under Ohio law, a claim for civil conspiracy requires 'a malicious combination of two or more persons to injure another in person or property, in a

way not competent for one alone, resulting in actual damages.'" *Meehan v. Mardis*, 2019-Ohio-4075, ¶ 46 (1st Dist.), quoting *Doane v. Givaudan Flavors Corp.*, 2009-Ohio-4989, ¶ 32 (1st Dist.). "A civil-conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Id.*

{¶61} "In a conspiracy, the acts of coconspirators are attributable to each other." *Meehan*, at ¶ 47, citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 476 (1998). "'All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable.'" *Id.*, quoting *Williams* at 476.

{¶62} As to the claim of civil conspiracy in the instant case, no evidence in the record at the summary judgment stage supported that cause of action. Boyer has presented no evidence that either David or Ronald conspired with any other person or persons in a common plan or design to commit a tortious act, and the affidavits of David and Ronald completely refute the conspiracy claim. Again, we note that in order to avoid summary judgment, Boyer was required to come forward with specific evidence, not just general allegations, in support of this cause of action. *See Ineos USA L.L.C.*, 2014-Ohio-4996, at ¶ 18; Civ.R. 56(E).

{¶63} As Boyer failed to present any evidence of other persons aiding or encouraging or otherwise conspiring with either David or Ronald to commit a wrongful act, there is no genuine issue of material fact as to this cause of action.

Accordingly, the trial court did not err in granting summary judgment in favor of the defendants on the fourth cause of action.

*Fifth Cause of Action – Injunctive Relief*

{¶64} The fifth and final cause of action in Boyer's complaint set forth a claim of "injunctive relief."

{¶65} Upon review, this Court finds that the asserted cause of action for injunctive relief legally fails because "'injunctive relief is a remedy, not a cause of action.'" *Carstensen v. Bd. of Trustees of Allen Twp.*, 2024-Ohio-870, ¶ 13 (6th Dist.), quoting *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 70 (8th Dist.). *See also Bresler v. Rock*, 2018-Ohio-5138, ¶ 45 (10th Dist.).

{¶66} Moreover, "[i]n order for a plaintiff to be granted injunctive relief, that party must show that the relief is necessary to protect a clear right from immediate and irreparable harm when any other remedy at law is inadequate." *AgriGeneral Co. v. Lightner*, 127 Ohio App. 3d 109, 115 (3d Dist. 1998), citing *Ackerman v. Tri–City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56 (1978); *Lemley v. Stevenson*, 104 Ohio App.3d 126, 136 (6th Dist. 1995). "Irreparable harm consists of the substantial threat of material injury which cannot be compensated with monetary damages." *Id.*, citing *Restivo v. Fifth Third Bank*, 113 Ohio App.3d 516, 521 (6th Dist. 1996).

{¶67} In the instant case, the complaint failed to allege the factual elements necessary to support a request for injunctive relief, and Boyer's affidavit included no averments tending to establish the same.

{¶68} For those reasons, we conclude that the trial court did not err in granting summary judgment in favor of all defendants as to the fifth cause of action.

*Conclusion*

{¶69} As detailed above, the May 30, 2025 judgment of the Seneca County Court of Common Pleas is affirmed. Boyer's assignment of error is overruled.

***Judgment affirmed***

**WILLAMOWSKI, J., concurs.**

**WALDICK , J., concurring in part and dissenting in part.**

{¶70} I concur in part and dissent in part. I strongly disagree with the majority's holding with regard to the second cause of action of Boyer's complaint as it relates to defendant Paul "David" Seislove. The elements for a breach-of-fiduciary-duty claim are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury proximately resulting. *Hickerson v. Hickerson,* 2010-Ohio-4070, ¶ 24 (3d Dist.).

{¶71} It is undisputed in this case that Seislove Burial Vault Service, Inc. is a close corporation, which is defined as "an entity with 'few shareholders and whose corporate shares are not generally traded on a securities market.'" *Hickerson*, at ¶ 25, quoting *Tinter v. Lucik,* 2007-Ohio-4437, ¶ 23 (8th Dist.). "'[O]wnership of

close corporations is "limited to a small number of people who are dependent on each other for the enterprise to succeed."'" *Id*., quoting *Wheeler v. Johnson,* 2008-Ohio-2599, ¶ 24 (2d Dist.), quoting *Tinter,* at ¶ 23. "Essentially, shareholders in a close corporation owe each other a fiduciary duty to deal in utmost good faith." *Id.*, citing *Herbert v. Porter,* 2006-Ohio-355, ¶ 12 (3d Dist.).

**{¶72}** In *Thomas v. Fletcher*, 2006-Ohio-6685 (3d Dist.), this Court elaborated upon the fiduciary duty that arises among shareholders in a close corporation:

> Majority shareholders in a close corporation owe minority shareholders a heightened fiduciary duty. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 548 N.E.2d 217, paragraph two of the syllabus. Majority shareholders in a close corporation breach their fiduciary duty to minority shareholders when they use their control of the corporation to obtain benefits that are not shared by the minority shareholders. *Id.* at 109, citing *Alaska Plastics, Inc. v. Coppock* (Alaska 1980), 621 P.2d 270.
>
> "Where majority or controlling shareholders in a close corporation breach their heightened fiduciary duty to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent any legitimate business purpose, is actionable." *Id.* Majority shareholders cannot terminate a minority shareholder employee without a legitimate business purpose. *Duggan v. Orthopaedic,* 365 F.Supp.2d 853, 863, citations omitted.

*Id.*, at ¶¶ 14-15.

**{¶73}** The reason for that heightened fiduciary duty was explained by the Supreme Court of Ohio in *Crosby v. Beam*, 47 Ohio St. 3d 105 (1989), as follows:

> While a close corporation provides the same benefits as do other corporations, such as limited liability and perpetuity, the close corporation structure also gives majority or controlling shareholders opportunities to oppress minority shareholders. For example, the majority or controlling shareholders may refuse to declare dividends, may grant majority shareholders-officers exorbitant salaries and bonuses, or pay high rent for property leased from the majority shareholders. *Donahue v. Rodd Electrotype Co. of New England, Inc.* (1975), 367 Mass. 578, 588–589, 328 N.E.2d 505, 513.

> Minority shareholders in a close corporation, denied any share of the profits by the majority shareholder's action, will either suffer a loss or try to find a buyer for their stock. This situation is contrasted with an oppressed minority shareholder in a large publicly owned corporation who can more easily sell his shares in such a corporation. Generally, there is no ready or available market for the stock of a minority shareholder in a close corporation. This presents a plight for a minority shareholder in a close corporation who can become trapped in a disadvantageous situation from which he cannot be easily extricated. *Donahue, supra,* 367 Mass. at 591–592, 328 N.E.2d at 515.

*Id.*, at 108.

{¶74} Finally, in a closely held corporation, a majority shareholder "'has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests.'" *Franks v. Rankin,* 2012–Ohio–1920, ¶ 34 (10th Dist.), quoting *Crosby*, at 108–109.

{¶75} In the instant case, the second cause of action of Boyer's complaint asserted a breach of fiduciary duty with respect to the operation and management of Seislove Burial Vault Service, Inc. At all times relevant to that claim, the company was a close corporation with three, and then two, shareholders. Before any of the shares of stock were transferred to Ronald Seislove, the combined shares owned by

David Seislove and Rita Scherger constituted a 66.66% interest in the corporation. Accordingly, David and Rita together were majority shareholders in a close corporation and owed Boyer a heightened fiduciary duty. The same is true of Ronald and David for the short time they were both shareholders. Once Ronald acquired a majority of the shares in the company, he then alone owned Boyer a heightened fiduciary duty in her capacity as a minority shareholder.

{¶76} With respect to the alleged breach of fiduciary duty regarding the corporation, Boyer's complaint alleges that the transfer of majority ownership of the company to Ronald was done without her knowledge and consent, to her detriment.

{¶77} As noted above, in order to facilitate Ronald's purchase of Rita's stock in 2018, a restriction on stock transfers in the company's Code of Regulations was amended by a two-thirds vote of the shareholders, the persons voting in favor of the amendment being David and Rita. Following that, David gifted his 167 shares of stock to Ronald in August of 2018, and then Ronald purchased Rita's 167 shares in October of 2018. As David and Ronald acknowledge in their affidavits filed in support of summary judgment, that amendment of the Code of Regulations permitted a shareholder to sell shares to another shareholder or another shareholder's children, without triggering the rights of first refusal held by other shareholders – such as Boyer – pursuant to the original Code of Regulations.

{¶78} The trial court in its judgment entry concluded, in essence, that Boyer's breach of fiduciary duty claim regarding the transfer of majority ownership to Ronald fails as a matter of law because the procedural requirements in the Code of Regulations for making amendments thereto were followed when the amendment was effectuated. However, while the Code of Regulations may have been amended consistent with its express terms, that same conduct could nonetheless form the basis of Boyer's claim for a breach of shareholder fiduciary duty. If the law were otherwise, "majority shareholders could easily circumvent their fiduciary duties by enacting amendments to accomplish what would otherwise be impermissible. * * * A provision can be adopted pursuant to the terms of an agreement and nonetheless violate a fiduciary duty." *Scala v. Scala*, 2023-Ohio-2232, ¶ 35 (9th Dist.).

{¶79} Again, the standard of duty owed by majority or controlling shareholders in a close corporation is that of the "'utmost good faith and loyalty.'" *Crosby*, *supra*, at 108, quoting *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 593 (1975). A breach of this heightened fiduciary duty is actionable, absent "any legitimate business purpose." *Crosby*, at paragraph two of the syllabus. Ultimately, "controlling shareholders of a close corporation owe a fiduciary duty to minority shareholders, a duty which is violated when the majority takes action it is authorized to take which nevertheless operates to the disadvantage of the minority and was not undertaken in

good faith and for a legitimate business purpose." *Busch v. Premier Integrated Med. Assoc., Ltd.*, 2003-Ohio-4709, ¶ 79 (2d Dist.).

{¶80} This duty of good faith in the context of a close corporation or partnership involves more than just honesty. As explained in *DiPasquale v. Costas,* 2010-Ohio-832 (2d Dist.), "'[a] lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *Id.* at ¶ 127, quoting *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 276 (1983).

{¶81} In this case, the uncontested evidence relevant to summary judgment establishes that Ronald's control of the Seislove corporation was acquired following a purposeful manipulation of the company's governing rules, to the potential benefit of David, Ronald, and/or Rita. By David agreeing to an amendment of the rules in the manner utilized, and particularly given the substance of the amendment, it was ensured that Boyer would have no say in either the amendment or, more importantly, in the transfer of majority ownership—and full control of the company—to Ronald. While those changes in company ownership and management could have been made for legitimate business purposes, I believe there are issues of fact on that point. In his affidavit, David puts forth several reasons as to why he wanted his son

to take control of the company and those reasons may ultimately convince a jury. However, the disparity in treatment of Boyer as a minority shareholder, as well as the timing of the amendment of the company's regulations and the manner in which that was accomplished, raise genuine issues of material fact in connection with Boyer's claim for breach of fiduciary duty regarding the company.

{¶82} While the record also reflects hearsay evidence, offered by the defendants in support of summary judgment, that Boyer may have consented in 2019, through her attorney, to the amendment of the corporate regulations that occurred in 2018, the precise nature and the extent of that after-the-fact "consent" was not elaborated upon in the documents filed by the defendants in support of their motion for summary judgment. Additional documents submitted by the defendants in support of summary judgment also reflect that Boyer refused to sign the minutes of the March 25, 2019 annual shareholders meeting, at which the defendants allege that Boyer consented to the prior transfer of majority stock ownership to Ronald Seislove.

{¶83} Accordingly, I would find that a question of triable fact remains with regard to Boyer's breach of fiduciary duty claim relating to the amendment of the corporate regulations, approved by David Seislove and Rita Scherger, that then permitted the transfer of stock ownership from Rita Scherger to Ronald Seislove.

{¶84} I would therefore hold that the trial court erred in granting summary judgment as to defendant Paul David ("David") Seislove on the second cause of action raised in the complaint.[1]

---

[1] Rita Scherger was not named as a defendant in the complaint.

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
Mark C. Miller, Judge

_____
John R. Willamowski, Judge

_____
Juergen A. Waldick, Judge
Concurs in part and Dissents in part

DATED:
/jlm